[No. 30937-4-I.    Division One.    July 12, 1993.]

*In the Matter of the Estate of*
KENNETH LEE BURMEISTER.

JEANNE BURMEISTER, *Respondent,* v. LEANNE J. GRIFFITH,
*as Personal Representative,* ET AL,
*Appellants.*

*Thomas D. Adams* and *Newton, Kight, Adams & Castleberry,* for appellants.

*James U. Bittner* and *Kasperson & Bittner, P.S.,* for respondent.

FORREST, J. — Leanne J. Griffith, Heidi L. Payseno, Tamara J. Benz, and Kim D. Pratt, as the surviving daughters and beneficiaries of Kenneth Lee Burmeister, and Leanne J. Griffith, as personal representative of the estate of Kenneth Lee Burmeister (hereafter collectively referred to as Griffith), appeal the order (1) revoking Kenneth's will as to Jeanne Burmeister, Kenneth's second wife, (2) ordering that she take the intestate share of the estate to which a surviving spouse is entitled, (3) awarding Jeanne $38,759.17 in attorney fees and $776 in costs against the estate, and (4) awarding Griffith attorney fees against the estate. Griffith contends the will was improperly revoked based on the trial court's erroneous conclu-

sion that the prenuptial agreement entered into between Kenneth and Jeanne did not make provision for Jeanne. Jeanne appeals the court's award of attorney fees to her and claims that she should have been awarded all the fees she requested and that the award should have been against the daughters personally. Jeanne also claims the award of attorney fees to Griffith against the estate was error. Finding no error, we affirm.

## STATEMENT OF FACTS

Kenneth and Janet Burmeister executed reciprocal wills in 1977. Janet died in 1988, leaving Kenneth and four daughters as survivors. The four daughters became beneficiaries under Kenneth's will and are presently adults.

Kenneth and Jeanne Mliner Burmeister were married on May 11, 1990. At Kenneth's urging, shortly before her marriage, Jeanne left her job as a flight attendant with Northwest Airlines, a job she had held for 24 years. The day before their marriage, Kenneth and Jeanne executed a prenuptial agreement in which they agreed that the property owned by each party at the time of the marriage would remain each party's sole and separate property throughout the marriage and that each party would have the right to dispose of their own separate property as if they were unmarried.[1] The agreement also addressed each party's respective rights upon the other's death. Relevant portions are excerpted below. In an amendment to the agreement, executed the same day as the agreement, the parties acknowledged that Jeanne terminated her tenured employment and that, in the event of a dissolution, her ability to regain employment at a comparable level might be severely limited. In consideration of Jeanne's entering into the marriage and her execution of the prenuptial agreement, Kenneth agreed that in the event of a dissolution, he would compensate Jeanne, subject to his ability to pay and her need for maintenance, "a sum sufficient to sustain and support her at a level enjoyed by her immediately prior to the marriage."

---

[1]The net worth of Kenneth's property at the time the agreement was signed was $2,092,000, and that of Jeanne's property was $128,100.

Kenneth died 5 months later and Leanne Griffith, his eldest daughter, was appointed executrix. Kenneth's daughters forced Jeanne to leave Kenneth's residence and she was unable to resume her prior position with Northwest Airlines. At the time of trial, she held three part-time jobs.

Jeanne filed a petition for award in lieu of homestead, petition for family allowance, petition to declare prenuptial agreement invalid, and a complaint to enforce contract to execute a will. The court found that the prenuptial agreement was valid and binding, ordered Kenneth's will revoked as to Jeanne, and ordered that Jeanne take the intestate share of his estate to which a surviving spouse is entitled. The court dismissed Jeanne's claim that she was a creditor of the estate based on promissory estoppel, and held that she waived and was not allowed either an award in lieu of homestead or a family allowance.[2] The court awarded Jeanne $38,759.17 in attorney fees and $776 in costs against the estate, and awarded Griffith $21,211 in attorney fees against the estate. Both parties appeal.

### REVOCATION OF THE WILL

The relevant statute provides:

> If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse.

RCW 11.12.050.

Griffith contends the statutory presumption of revocation does not apply because the prenuptial agreement between Kenneth and Jeanne made a "provision" for Jeanne in the

---

[2]In the agreement, both Kenneth and Jeanne agreed not to demand a right to homestead, an award in lieu of homestead, or a family allowance upon the other's death.

event of Kenneth's death, which provision was not to give Jeanne anything in the event of his death.

There is no dispute that Kenneth's 1977 will did not make a provision for Jeanne or mention Jeanne in such a way as to show an intention not to make such provision.

A valid prenuptial agreement can be a marriage settlement for purposes of RCW 11.12.050.[3] Jeanne does not contest the validity of the prenuptial agreement under *Friedlander v. Friedlander.*[4] So, since the statute precludes any other evidence, the issue is whether, on the basis of the terms of the settlement agreement alone,[5] a "provision" was made for Jeanne in the event of Kenneth's death. Clearly, the prenuptial agreement made no *beneficial* provision for Jeanne in such event; indeed it took away statutory rights.[6]

---

[3]*In re Estate of McKiddy*, 47 Wn. App. 774, 778, 737 P.2d 317 (1987).

[4]80 Wn.2d 293, 494 P.2d 208 (1972). For a prenuptial agreement to be valid, the prospective spouse must have "full and fair disclosure of all material facts relating to the amount, character and value of the property involved so that she will not be prejudiced by the lack of information, but can intelligently determine whether she desires to enter the prenuptial contract." *Friedlander*, 80 Wn.2d at 302. Also, "the prospective spouse must sign the agreement freely and voluntarily on *independent advice* with full knowledge of her rights." *Friedlander*, 80 Wn.2d at 303.

[5]The court may consider only the existence and terms of a marriage settlement to rebut the presumption of revocation of the will. *In re Estate of Geer*, 29 Wn. App. 822, 827, 629 P.2d 458, *review denied*, 96 Wn.2d 1004 (1981).

[6]The prenuptial agreement between Kenneth and Jeanne addresses the parties' rights upon the death of one of them as follows:

"Further, except as stated herein, both parties covenant and agree to and with the other that neither, during the lifetime of the other or after one of their respective deaths, whichever may occur first, shall take, claim, demand or receive any right of homestead, or in lieu of homestead, in any property which either respective party might own at the time of the other's death, nor will either party demand, take or receive any survivor's award or family allowance as provided by the statutes of the State of Washington or any other state in which they may·be domiciled at the time of either of their deaths, but the parties hereby expressly and forever, except as stated herein, renounce and waive all such rights which might or otherwise be. coming to either party under and by virtue of the laws of the State of Washington."

The prenuptial agreement also provides:

"In the event of the death of either party, the parties agree that neither party shall claim the right to inherit the separate and/or community one-half of the

■ Griffith argues nonetheless that the phrase "unless provision shall have been made for such survivor by marriage settlement" is satisfied by a term in the settlement that explicitly evidences an intent not to make any beneficial provision. This is not persuasive. In the portion of the statute dealing with a will,[7] "provision" clearly means *beneficial* provision, because it says the testator must show an intent not to make a "provision". In short, the statutory language strongly suggests different requirements for disinheritance by settlement than by will.

More cogently, Griffith argues that the plain purpose of the statute is to prevent unintentional disinheritance of a new spouse by failure to make a new will.[8] Since the statute permits such disinheritance so long as it is clearly manifested, she argues that a prenuptial agreement clearly manifesting such intent, such as this agreement, should satisfy the statutory requirement.

This argument was rejected in *Koontz v. Koontz*,[9] which we find dispositive. In *Koontz*, the decedent, a widower, married a widow almost 2 years after making a will in which he left all his property to his sons. The will made no provision

property of the deceased spouse, unless provided for by Will or Trust Agreement executed by the deceased spouse. The parties are aware that the laws of the State of Washington provide that rights of the surviving spouse to elect against a Will be barred by the terms of a written agreement signed by both spouses. The parties understand that this Agreement constitutes a written agreement under RCW 26.16.120, regardless of any amendments, revisions or repeals of that statute which may occur in the future.

"The parties further waive all other family rights otherwise provided by RCW 11.52, including any allowance to the other during the period of administration, as may be provided by RCW 11.52.040 and the award in lieu of homestead by the surviving spouse as provided by RCW 11.52.020."

[7]"If, after making any will, the testator shall marry and the spouse shall be living at the time of the death of the testator, such will shall be deemed revoked as to such spouse, . . . unless such survivor be provided for in the will or in such way mentioned therein as to show an intention not to make such provision[.]" RCW 11.12.050.

[8]*See In re Estate of Steel*, 45 Wn.2d 58, 61, 273 P.2d 235 (1954).

[9]83 Wash. 180, 145 P. 201 (1915).

for or mention of his new wife. After the decedent's death, the sons sought to show, through oral evidence, that the decedent and his wife had reached an express understanding prior to their marriage that when either should die, the survivor would have no interest in the other's estate. The court stated that, even assuming the validity of the oral agreement:

> [p]roof of a settlement such as that here advanced denying her any provision from his own property even as his heir, would not be sufficient [to toll revocation] since such a settlement would make no provision for her, but quite the contrary. It would take away that provision which, but for the agreement, the law would give her.

*Koontz v. Koontz*, 83 Wash. 180, 183, 145 P. 201 (1915). The court concluded "that if, as we have held, the statute means what it says, the settlement here claimed, even if established by competent evidence, made no provision for the surviving wife, hence did not toll the revocation." *Koontz*, 83 Wash. at 183.

■ Although following *Koontz* frustrates Kenneth's intent as manifested in the prenuptial agreement, Kenneth could have unequivocally achieved his goal by following the dictates of RCW 11.12.050 and disinheriting Jeanne in his will. Further, applying *Koontz* avoids an unfair result as to Jeanne, who gave up a good job in order to marry Kenneth and was left with neither income nor home upon Kenneth's death. Moreover, since Kenneth recognized an obligation to provide for Jeanne in the event of a divorce, that is, upon failure of the marriage, it seems inconsistent that he would not provide some income or property to Jeanne in the event of his death while the marriage was presumptively still successful. The statute has been in effect in the same or substantially similar form since 1860. *Koontz* is the only case addressing the issue presented here. Only 15 cases have mentioned the statute in the context of revocation of a will upon subsequent marriage and none of these cases found any confusion or ambiguity in the statute. The absence of

appellate cases on this issue coupled with legislative inaction suggests that the *Koontz* construction of the statute fulfills the statute's purpose and is not confusing to spouses involved in second marriages with an earlier will. The trial court did not err in holding Kenneth's prior will revoked as to Jeanne and directing that she take the surviving spouse's intestate share.

## ATTORNEY FEES

The court awarded attorney fees pursuant to RCW 11.96-.140, which provides that "[e]ither the superior court or the court on appeal, may, in its discretion, order costs, including attorneys fees, to be paid by any party to the proceedings or out of the assets of the estate, as justice may require."

The court awarded Jeanne $38,759.17 in attorney fees plus $776 in costs against the estate and awarded Griffith $21,211 in attorney fees against the estate.

Jeanne contends she should have been awarded the entire $58,138.75 she requested. However, Jeanne provides no support for her claim that she is entitled to over $58,000 in fees, and thus fails to show any error on the part of the trial court with respect to the amount awarded, especially since she failed to prevail on several of her theories.

Jeanne also contends that the court erred in ordering attorney fees payable out of the estate rather than against the daughters personally. We disagree. In enacting RCW 11.96-.140, the Legislature obviously recognized that, in light of the almost limitless sets of factual circumstances that might arise in a probate proceeding, no set standard for the award of attorney fees could successfully be formulated. Rather, the Legislature wisely left the determination of an award of fees to the trial court and directed only that the award be made "as justice may require." RCW 11.96.140.

Here, both sides advanced reasonable and good faith arguments in support of their respective positions. The trial court properly determined that costs and fees should be chargeable against the estate, rather than against the par-

ties personally, so that all the contesting parties would bear the costs of determining the proper distribution of the estate.

■ We note that in *In re Estate of Niehenke*, 117 Wn.2d 631, 648, 818 P.2d 1324 (1991), the court stated that "it is inappropriate to assess fees against an estate when the litigation could result in no substantial benefit to the estate[.]" (Footnote omitted.) However, the court did not hold that attorney fees could *never* be appropriately awarded against an estate if the estate were not substantially benefited, but rather recognized that "there will be situations where attorneys' fees are justly assessed against an estate[.]" *Niehenke*, 117 Wn.2d at 648. In *Niehenke*, the award of attorney fees against the estate affected the interests of uninvolved beneficiaries and would have resulted in their partially funding the attorney fees for the litigating parties. Here, however, all the beneficiaries are involved in the dispute and the award of fees against the estate justly imposed the costs of the litigation to ascertain their rights upon all those involved.

■ Finally, Jeanne argues that the court erred in awarding the daughters attorney fees because they were not prevailing parties. However, the statute does not limit the award of attorney fees to prevailing parties but rather, as stated, permits an award "as justice may require." In a letter to all counsel, the court stated:

> In a case such as this where the contending parties each wind up, in effect, as residual beneficiaries of the estate it would appear most just to have the fees expended in the litigation on both sides paid from the estate so long as the fees requested by the respective parties bear some reasonable relationship to each other and that the positions taken in the litigation by the respective parties are reasonable given the law and facts. To hold otherwise would mean, for instance, that if I deny Mrs. Burmeister her claim for reimbursement, she might wind up paying 100% of her own attorneys fees, plus (although indirectly) another 50% or so of the attorneys fees expended by the estate in resisting her claim. That does not seem fair.

Under the circumstances, the trial court's award of attorney fees was proper.

Affirmed.

WEBSTER, C.J., and PEKELIS, J., concur.

Review granted at 123 Wn.2d 1006 (1994).