[No. 13134-3-III.   Division Three.   March 28, 1996.]

*In the Matter of the Estate of* DE ANNE C. COOPER.

JOYCE COOPER JOHNSTON, *Respondent*, v. FERMORE B. COOPER, ET AL., *Appellants*.

82

*James J. Workland* and *Workland, Witherspoon & Riherd;* and *Mark E. Vovos,* for appellants.

*Paul J. Allison, Robert T. Carter,* and *Randall & Danskin, P.S.,* for respondent.

SWEENEY, C.J. — Washington's prudent investor rule requires a trustee to "exercise the judgment and care under the circumstances then prevailing, which persons of prudence, discretion and intelligence exercise in the management of their own affairs . . . ." RCW 11.100.020(1). This exercise of judgment requires, among other things, "consideration to the role that the proposed investment or investment course of action plays within the overall portfolio of assets." RCW 11.100.020(1). In this case of first impression, we are asked to decide whether the prudent investor rule limits the court's consideration to the overall performance of the trust, or whether, instead, the court may consider the performance of specific assets in the

trust. We hold the prudent investor rule focuses on the performance of the trustee, not the results of the trust. The trial court here then appropriately considered individual assets, and groups of assets, in finding that the trustee had improperly weighed trust assets in favor of himself, the income beneficiary. We affirm that portion of the court's judgment which required the trustee to reimburse the trust corpus for the loss caused by that investment strategy. We reverse other court rulings regarding personal representative, trustee and attorney fees.

FACTS

The Estate

De Anne Cooper died on March 6, 1978. In her will, she provided that her one-half of the community property would be held in trust during her husband Fermore B. Cooper's lifetime, and that Mr. Cooper and The Old National Bank of Washington (ONB) would serve as cotrustees of the testamentary trust. The trust required payment of income to Mr. Cooper and distribution of the corpus to her children after Mr. Cooper's death. The nonintervention will named Mr. Cooper personal representative. At the time of her death, Mrs. Cooper had two children, Joyce Johnston and Richard Cooper. Her one-half of the community property was worth about $800,000.

Mr. Cooper filed his wife's will and started a probate. But he took no further steps to conclude the probate until Joyce filed this action. He did not keep a separate estate account and continued to manage all of the former community property as his own.

In 1986, Mr. Cooper asked Joyce to approve the substitution of Richard for ONB as cotrustee of the trust. Joyce refused and asked about Mr. Cooper's management of the estate. At that point, Mr. Cooper funded the trust by depositing in ONB assets valued at approximately $2,000,000. Joyce then petitioned the court to remove Mr. Cooper as personal representative of the estate and trustee

of the trust, and for an accounting and a declaration that Mr. Cooper's second wife had no interest in the trust property. Her petition included a request for attorney fees and costs.

The Inventory

In March 1989, Mr. Cooper filed an inventory of estate assets. The asset mix set out in that inventory generates the primary dispute in this case. The inventory included (1) an unsecured note from Gifford-Hill, Inc., with a balance of $1,200,000 owing on the date of Mrs. Cooper's death; (2) partnership interests in Eight-O-One Investment Company and Hillside Investment Company, which owned interests in the Deaconess Medical Building; and (3) substantial holdings in income-producing assets including tax-exempt bonds. The inventory did not include shares in Comtrex, Inc. Mr. Cooper's son, Richard, was the chief executive officer of Comtrex. After Mrs. Cooper's death, Mr. Cooper bought shares in the company and also loaned it approximately $824,000, which Comtrex never repaid.

Before Mr. Cooper compiled the inventory, he had sold the community's share of stock in a closely held corporation, Western Frontiers. The corporation owned the North Shore, a hotel and restaurant in Coeur d'Alene. Its shares were valued for estate tax purposes in 1978 at 75¢ a share, for a total value of $21,750. Mr. Cooper sold both his and the estate's shares in 1983 to Duane Hagadone at a profit of about $1 million. The stock had appreciated largely because of a bidding war between Mr. Hagadone and Robert Templin. Both wanted control of the company. The purchase gave Mr. Hagadone a majority interest. Mr. Cooper reinvested the proceeds in stocks and bonds.

An accounting filed along with the inventory calculated the current value of Mrs. Cooper's estate at $1,279,433. Mr. Cooper's accountant compiled the accounting from estate tax returns and transaction sheets supplied by Mr. Cooper's stockbroker. The accounting summarized (1) purchases and sales of assets listed in the 1978 estate tax return, (2) capital gains, and (3) income.

On December 26, 1989, the superior court appointed John Cummins "as special master/referee to assist [it] in resolving various disputes that [had] arisen in connection with [the Cooper] estate." At the time, Mr. Cummins was a vice-president of Seattle-First National Bank and manager of its trust department. The court asked Mr. Cummins to contact the trust department of U.S. Bank (ONB's successor) to "review what has transpired in connection with the assets" deposited by Mr. Cooper in 1987 to fund the trust. The court also asked Mr. Cooper to forward to Mr. Cummins a copy of the estate accounting. After consulting with Mr. Cummins, the court found that "the accounting as accomplished to date in connection with the trust estate is not in accordance with generally recognized format and principles." It then instructed Mr. Cooper's accountant, James McDirmid, "to confer with Mr. Cummins as to what is contemplated to comply with those standards."

Mr. Cooper filed a revised inventory accounting in May 1990 based on Mr. McDirmid's calculations (McDirmid accounting). It set the 1987 fair market value of the inventoried assets at $1,835,821.50. The value of the assets Mr. Cooper had transferred to fund the trust in 1987 had a value of $1,959,113. Thus, the trust was overfunded by $123,291.50. The accounting also valued the partnership interests in Eight-O-One and Hillside, half of which the estate owned, at $192,000 and $86,000, respectively. These values reflected a 60 percent discount because Mr. Cooper's interest was a minority interest and therefore not easily marketable.

Mr. Cummins concluded the amended accounting revealed "no improprieties." The court refused Joyce's request to discover the basis for Mr. Cummins' opinions. It stated Mr. Cummins was appointed "solely for the purpose of deciding whether or not F. BERT COOPER should be removed as Personal Representative."

The Litigation

On December 12, 1990, the court directed the parties to proceed to a hearing on the final report and petition for

distribution. At the hearing, the principal issues were the accuracy of the McDirmid accounting and the propriety of Mr. Cooper's investment strategy. Mr. Cooper and Joyce presented expert opinion testimony in support of their respective positions.

### The Ruling

On December 15, 1992, following the hearing, the court found Mr. Cooper had commingled income from estate assets and proceeds from the sale of estate assets with his own funds. It found the accounting prepared by Mr. Cooper's accountant adequately traced the estate's assets. The court further found, based on the McDirmid accounting, that Mr. Cooper "had more than sufficient funds in his own right as his separate property to make gifts and other distributions to and for the benefit of his children."

The court agreed with Mr. Cooper's valuation of the Eight-O-One and Hillside partnerships. And it held he had acted prudently in negotiating the sale of the Western Frontiers shares. It found that Mr. Cooper had, however, "maintained a policy of investment . . . which maximized the income of the estate . . . to the detriment of the growth of the corpus of the estate." It valued the loss to the remainder interest at $342,493 as of July 1987. It ordered Mr. Cooper to contribute that additional amount, along with $115,840 of expected appreciation from July 1987 to entry of the judgment.

The court also found that Mr. Cooper had overfunded the trust by $123,292. It credited that sum against the $458,333 surcharge it had levied against Mr. Cooper to compensate the trust for losses it suffered as a result of his investment strategy ($342,493 + $115,840). It held estate taxes, attorney and accounting fees, and expenses of administration were properly charged by Mr. Cooper to the estate. The court set 1984 as the outside date by which Mr. Cooper should have closed the estate. It then awarded him a fee for serving as personal representative from 1978 through 1984. It also awarded him a fee as cotrustee from

July 1987 to the date of the judgment. It ordered the trust divided between Richard and Joyce and discharged Mr. Cooper as the trustee over Joyce's half because of the "mutual distrust, conflict, and dissension" between Joyce and Mr. Cooper.

The court further found that "[a]ll parties to this cause have succeeded to some degree herein and have worked for the benefit of the estate and of their respective clients." It therefore awarded all parties a portion of their attorney and accountant fees. Joyce received $45,600 in attorney fees and $12,421.67 for her accountant's fees. The court awarded Mr. Cooper $46,400 of the $115,000 in attorney fees he had requested, and $48,802.50 for his accountant's fees. It awarded Richard $18,400 in attorney fees and $220.47 in costs. The court approved Joyce's additional attorney and professional fees of $156,975, but ordered them charged to her share of the trust.

### Discussion

#### The Appeal

*Prudent Investor.* The question presented is whether the trial court improperly applied the prudent investor rule. Mr. Cooper and Richard argue the court should have evaluated Mr. Cooper's performance based on the performance of the trust as a whole rather than focusing on specific assets, or groups of assets. They point out that the return on total trust assets exceeded that of the ONB trust department.

The trust's favorable performance, as compared to that of the ONB trust department, was largely due to the gains from Mr. Cooper's sale of the estate's Western Frontiers stock. The balance of the trust assets were weighted heavily toward current income rather than capital appreciation. Common stocks represented 13 percent of the trust's marketable securities; bonds and bond equivalents represented 87 percent. The estate's gain attributable to increases in the value of the securities was only $226,313.

This figure represented a 22.23 percent return on those investments, or a 2.15 percent increase per year between 1978 and 1987. Inflation averaged 6 percent a year during that same period. The purchasing power of these assets decreased, then, just under 4 percent a year.

■ Overall trust performance is a factor in evaluating the performance of the trustee. But it is not by itself controlling. "The court's focus in applying the Prudent Investor standard is conduct, not the end result." J. Alan Nelson, *The Prudent Person Rule: A Shield for the Professional Trustee*, 45 Baylor L. Rev. 933, 939 (1993). The American version of the prudent investor rule began with the *Harvard College* case:

> All that can be required of a trustee to invest, is, that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion, and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested.

Nelson, 45 BAYLOR L. REV. at 939 (quoting *Harvard College v. Amory*, 26 Mass. (9 Pick.) 446, 460-61 (1830)). In *Harvard College*, the court recognized that trust assets could never be fully protected from the uncertainties of the market place; thus, the prudent investor standard was necessarily flexible. Nelson, 45 Baylor L. Rev. at 938.

■■ In the recent New York case of *In re Lincoln First Bank, N.A.*, 165 Misc. 2d 743, 630 N.Y.S.2d 472 (Sur. Ct. 1995), the court interpreted its own version of the prudent investor rule and made two observations which are helpful here. First, "whether an investment is prudent or not is a question of fact." *Lincoln First Bank*, 630 N.Y.S.2d at 474 (citing *In re Clarke's Estate*, 12 N.Y.2d 183, 188 N.E.2d 128, 237 N.Y.S.2d 694 (1962); *In re Yarm*, 119 A.D.2d 754, 501 N.Y.S.2d 163 (1986)). Second, the prudent investor standard requires "that the fiduciary maintain a balance between the rights of income beneficiaries with those of

the remainderman." *Lincoln First Bank*, 630 N.Y.S.2d at 474. This state's version of the rule also requires that the trustee consider income as well as the safety of the capital and the requirements of the beneficiaries. RCW 11.100.020(1), (2).[1] Clearly, the focus is on the trustee's performance, not simply on the net gain or loss to the trust corpus. Nelson, 45 BAYLOR L. REV. at 939.

■ The trial court here properly applied the prudent in-

---

[1] In 1984, the Legislature amended RCW 34.24.020 and recodified it as RCW 11.100.020. That statute provides in part:

(1) A fiduciary is authorized to acquire and retain every kind of property. In acquiring, investing, reinvesting, exchanging, selling and managing property for the benefit of another, *a fiduciary, in determining the prudence of a particular investment, shall give due consideration to the role that the proposed investment or investment course of action plays within the overall portfolio of assets. In applying such total asset management approach, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which persons of prudence, discretion and intelligence exercise in the management of their own affairs,* not in regard to speculation but in regard to the permanent disposition of their funds, and if the fiduciary has special skills or is named trustee on the basis of representations of special skills or expertise, the fiduciary is under a duty to use those skills.

(2) Except as may be provided to the contrary in the instrument, the following are among the factors that should be considered by a fiduciary in applying this total asset management approach:

(a) The probable income as well as the probable safety of their capital;

(b) Marketability of investments;

(c) General economic conditions;

(d) Length of the term of the investments;

(e) Duration of the trust;

(f) Liquidity needs;

(g) Requirements of the beneficiary or beneficiaries;

(h) Other assets of the beneficiary or beneficiaries, including earning capacity; and

(i) Effect of investments in increasing or diminishing liability for taxes.

(Emphasis added.) The Legislature amended the statute in 1995, but the change is not material to the issue presented here.

Before 1984, RCW 30.24.020 provided in part: "[A] fiduciary shall exercise the judgment and care . . . which men of prudence, discretion and intelligence exercise in the management of their own affairs . . . considering the probable income as well as the probable safety of their capital."

vestor standard, as set forth above, and its findings of fact on that issue are supported by substantial evidence. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

Both parties rely on *Baker Boyer Nat'l Bank v. Garver*, 43 Wn. App. 673, 719 P.2d 583, *review denied*, 106 Wn.2d 1017 (1986). There, the trust beneficiaries sued for damages resulting from imprudent investments made by Baker Boyer, the trustee bank. They argued the bank had breached a duty to diversify when it invested primarily in fixed-income securities. The bank responded it had no duty to diversify under the prudent investor rule, as codified in former RCW 30.24.020 (now RCW 11.100.020). Even if such a duty existed, the bank contended diversification between fixed-income securities and equity investment in real property satisfied the duty under a "total asset" management approach.

The court agreed with the beneficiaries that the prudent investor standard includes the duty to diversify trust assets. But it found it unnecessary to decide whether former RCW 30.24.020 incorporated the "total asset" approach. The evidence supported the trial court's finding "the Bank had *not* weighed the investment in securities against the investment in the farmland for purposes of diversification." *Baker Boyer*, 43 Wn. App. at 681 (emphasis added).

Likewise, Mr. Cooper did not weigh his investment in income-producing securities against his investment in Western Frontiers. The overall trust performance was boosted dramatically by the sale of the Western Frontiers stock in 1983. But Mr. Cooper's investment strategy could not have anticipated the gain from the sale of the stock before it occurred. By 1983, when the stock was sold, he had been administering the estate for five years. Furthermore, after the sale, he invested the estate assets almost exclusively in marketable securities, 87 percent in bonds, favoring again the income beneficiary—him. There was no

other asset or group of assets which Mr. Cooper could have balanced against this investment.

Mr. Cooper also claims the amount the trial court awarded to compensate the trust for his investment strategy was error because the court did not deduct state inheritance tax, interest on deferred liability, and interest on tax deficiency from the estate's assets. If the court had done so, the baseline for calculating the estate's loss would have been less, and the overall rate of return would have been greater. He further alleges the court used incorrect tax rates in calculating the amount available to invest. Those arguments were not made in the trial court, which calculated the dollar amount of its judgment based upon the evidence presented. We, accordingly, do not address this assignment of error.

*Attorney and Accountant Fees.* Mr. Cooper and Richard contend the court erred in awarding Joyce attorney fees from the trust. In addition, Richard contends the court erred in awarding him less than half the fees awarded to Mr. Cooper and Joyce. Joyce argues the court should have required that Mr. Cooper, rather than the trust, pay her fees because his mismanagement of the trust assets precipitated the suit. She also challenges the court's award of any attorney fees to Mr. Cooper. She argues those fees were incurred in defending the alleged breach of his fiduciary duties.[2]

Both RCW 11.76 (settlement of estates) and RCW 11.96 (judicial proceedings in probate and trust matters) provide for attorney fees. Under RCW 11.76.070, the court may award fees to a party who brings suit to compel an accounting from the personal representative or to resist an inaccurate accounting. RCW 11.96.140 permits a court to "order costs, including attorneys' fees, to be paid by any

---

[2]We address these contentions raised by Joyce in her cross-appeal in this portion of our opinion, so as to dispose of all attorney and accountant fee issues together.

party to the proceedings or out of the assets of the estate or trust or nonprobate asset, as justice may require."[3]

In *In re Estate of Burmeister,* 70 Wn. App. 532, 539, 854 P.2d 653 (1993), *rev'd on other grounds,* 124 Wn.2d 282, 877 P.2d 195 (1994), the trial court refused to award fees against a party personally. Division One of this court affirmed. The court held that the Legislature in enacting RCW 11.96.140 intended to leave that decision to the discretion of the trial judge, to whom it gave the authority to award fees " 'as justice may require.' " *Burmeister,* 70 Wn. App. at 539. In approving the award of fees from the estate, the court in *Burmeister* relied on two factors. First, all of the beneficiaries affected by the litigation were involved in the dispute. Second, arguments by both sides were reasonable and in good faith. *Burmeister,* 70 Wn. App. at 539-40. But, *Burmeister* is distinguishable from the facts here. In *Burmeister,* the personal representative had not breached his fiduciary duties. If there is a breach of fiduciary duties, the plaintiff has a right to recover fees against the trustee personally. *Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 407, 663 P.2d 104 (1983).

With one exception, the awards here were an appropriate exercise of the court's discretion. Arguments by the parties related to the accuracy of Mr. Cooper's accounting. The court found them to be reasonable and made in good faith. The fact the court awarded Mr. Cooper less than his full request is supported by the fact a portion of those fees were incurred in the defense of Joyce's allegation that he violated the prudent investor rule. Richard complains his award of fees, when compared to the others, is small. The record demonstrates he played a lesser role in the proceedings. That fact supports the lower award. The court, however, should have awarded a portion of Joyce's fees against Mr. Cooper personally, because it found he breached his fiduciary duties. We therefore remand to the trial court to determine what part of Joyce's fees were at-

---

[3]The Legislature amended RCW 11.96.140, but the changes are not material to the issue presented here.

tributable to her challenge to Mr. Cooper's investment strategy.

Finally, Joyce argues the court erred in awarding Mr. Cooper his accountant fees. In her view, Mr. Cooper incurred those fees for his own benefit, not that of the estate. Her view, however, ignores the fact the trial court found in Mr. Cooper's favor on the question of whether the McDirmid accounting adequately traced the estate's assets.

Joyce specifically challenges Mr. McDirmid's fee of $2,345 to review his own files in preparation for a deposition. She contends Mr. McDirmid was an "actor in the transaction" and therefore was limited to collecting the statutory witness fee.

We first note the trial court ordered the above fee "held in abeyance . . . pending further order of the Court." The court ultimately awarded $48,802.50 in fees for Mr. McDirmid's services. The award does not specify whether it includes the fee for $2,345. If it did not, the trial court has not made a final determination and the issue is not ripe for review.

Assuming the judgment included the $2,345 fee, the award was appropriate pursuant to CR 26(b)(5) and 37(a)(4).[4] Joyce relies on *Baird v. Larson*, 59 Wn. App. 715, 720, 801 P.2d 247 (1990). Her reliance is misplaced. In that case, Dr. Frank Baird sued Dr. David Larson for breach of contract following the sale of Baird's practice to Larson. The appraiser who had valued the practice prior to the sale was called as a witness. The trial court awarded the appraiser an expert witness fee. We reversed, holding that "only opinions acquired and developed in anticipation of litigation are expert opinions." *Baird*, 59 Wn. App. at 719. The appraiser's opinion was not acquired in anticipation of litigation. He was, therefore, an occurrence witness, not an expert witness.

---

[4]CR 26(b)(5) allows limited discovery of the facts and opinions of experts which are "acquired or developed in anticipation of litigation . . . ." CR 37(a)(4) provides for the award of expenses incurred in obtaining such discovery.

The situation here is very different. Although Mr. Cooper had a fiduciary duty to account for trust assets, the actual accounting by Mr. McDirmid was prepared in response to Joyce's petition. His expenses were therefore properly charged to the estate. CR 26(b)(5); CR 37(a)(4).

All parties request attorney fees on appeal. "[T]he court on appeal, may . . . order costs, including attorneys' fees, to be paid by any party . . . or out of the assets of the estate . . . ." RCW 11.96.140. Since all parties have prevailed on some issues raised in the appeal and the cross-appeal, we award fees to Mr. Cooper, Richard and Joyce in amounts to be determined by this court's commissioner. RAP 18.1(f). The trust shall pay the fees awarded, except Mr. Cooper must pay that portion of Joyce's fees incurred defending the trial court's holding that his investment strategy violated the prudent investor rule.

In summary, we affirm all fees awarded payable out of the estate, save for the fees Joyce incurred in establishing Mr. Cooper's breach of fiduciary duty. We assess those fees against Mr. Cooper personally in an amount to be determined by the superior court.

*Removal of Mr. Cooper as Trustee.* Mr. Cooper next contends the court's removal of him as trustee over Joyce's half of the trust corpus violates the provisions of Mrs. Cooper's will. The will provided that neither income nor principal of the trust were alienable. He does not explain, however, how his removal as trustee results in an alienation of the trust's income and principal. Nothing in the court's order transfers either the right to the trust's income to someone other than Mr. Cooper, or the right to the trust's principal to someone other than Mrs. Cooper's children, following Mr. Cooper's death.

RCW 11.96.009 allows the court, in the exercise of its jurisdiction over probate and trust matters, to "administer and settle all trusts and trust matters . . . ." A court has a "wide latitude of discretion" to remove the trustee, "when there is sufficient reason to do so to protect

the best interests of the trust and its beneficiaries." *Schild-berg v. Schildberg*, 461 N.W.2d 186, 191 (Iowa 1990). Given the relationship between these parties, retaining Mr. Cooper as trustee only insures more litigation. The court did not abuse its discretion in removing Mr. Cooper as trustee.

*Waiver.* Both Mr. Cooper and Richard testified that shortly after Mrs. Cooper's death, Mr. Cooper advised his children their mother had left her property in trust with a remainder interest in them. According to them, Joyce responded: "Daddy, I want you to take care of everything just as you always have." They contend this amounted to a waiver of her right to challenge Mr. Cooper's management of the estate. We disagree.

A waiver is an intentional relinquishment of a known right. *Wagner v. Wagner*, 95 Wn.2d 94, 102, 621 P.2d 1279 (1980). The statement attributed to Joyce does not unambiguously renounce her right to prudent trust management. Her statement was not a waiver.

The Cross-Appeal

*Special Master — Discovery.* As stated in the facts, the court appointed John Cummins to review Mr. Cooper's accounting. Joyce contends the court used Mr. Cummins' report as evidence, and, therefore, it should have given her the opportunity to either cross-examine him or otherwise challenge his report. She argues the court should have followed the procedure for (1) special master provided in FED. R. CIV. P. 53, (2) referees acting under RCW 4.48.010, or (3) deposing expert witnesses under CR 26(b)(5)(A).

Mr. Cummins' first letter to the court reported he had reviewed the accounting and concluded it was not in accordance with generally accepted accounting principles. On April 3, 1990, the court ordered Mr. Cooper to revise the accounting "in accordance with directions from . . . John D. Cummins . . . ." In his second letter, dated April 25, 1990, Mr. Cummins approved the McDirmid accounting as amended.

On January 22, 1991, Joyce moved "[t]hat . . . counsel

be permitted to depose John D. Cummins, or that, in the alternative, all communications by him . . . be stricken, removed from the files . . ., and completely disregarded by [the] court . . . ." The court denied the motion, stating it considered Mr. Cummins' work product only for the limited purpose of deciding whether to remove Mr. Cooper as personal representative. Joyce contends the court used Mr. Cummins' reports for much more. She relies on the court's finding of fact 11: "The accountings were reviewed by the court's special master, John Cummins, and the court has indicated that the accountings submitted on behalf of the Personal Representative were prepared in accordance with generally accepted accounting principles for estates and trusts . . . ."

▮▮ The court's use of Mr. Cummins' reports and denial of discovery was error. ER 706 provides a court may appoint an expert witness with the consent of the parties. The parties also have the right to depose the expert and call him or her at trial. *See Graves v. P.J. Taggares Co.*, 25 Wn. App. 118, 120, 605 P.2d 348, *aff'd*, 94 Wn.2d 298, 616 P.2d 1223 (1980); R.E. Barber, Annotation, *Trial Court's Appointment, in Civil Case, of Expert Witness*, 95 A.L.R.2d 390 (1964). The court did neither. Nor did the court comply with RCW 4.48.010, which provides that the parties may, by written consent, permit the court to refer issues in a civil trial to a referee. The court also did not comply with the procedures outlined in FED. R. CIV. P. 53. That rule has not been adopted in Washington. It requires, among other things, that the court accept the master's findings unless clearly erroneous, and permit parties to submit written objections. FED. R. CIV. P. 53(e)(2). Joyce also relies on the Supreme Court's decision in *Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 32-33, 873 P.2d 498 (1994). There, the court held that county staff members, who prepared documents for consideration by a hearing examiner, were witnesses and had to be made available for cross-examination. Mr. Cummins was a witness and the trial court should have permitted discovery of his opinions and the reasons for them. CR 26(b)(5)(A).

We cannot, however, find any prejudice to Joyce. Mr. Cummins' opinions were fully disclosed. The only opinion given by Mr. Cummins and relied on by the court was that McDirmid's second accounting was prepared using acceptable accounting methods. Before trial, McDirmid's accounting was subject to extensive discovery. And during trial it was the topic of extensive cross-examination. Further, the court ultimately rejected Mr. Cummins' opinion that the prudence of Mr. Cooper's investment strategy should be judged by the total appreciation of the corpus, not the gain or loss of the marketable securities. The error was therefore harmless. *See Rice v. Janovich*, 109 Wn.2d 48, 62-63, 742 P.2d 1230 (1987) (ex parte contact by trial judge, absent showing of prejudice, is not ground for reversal).

## SUMMARY

In Mr. Cooper's appeal, we affirm the trial court's findings (1) his management of the estate's marketable securities breached his duty to act as a prudent investor, (2) removing him as trustee over half of the trust assets, and (3) rejecting his argument Joyce had waived any right to challenge his management. We also affirm the court's decision to award attorney fees to all parties, but remand for a determination of what portion of Joyce's fees were attributable to her challenging Mr. Cooper's management of the marketable securities. That amount shall be paid by Mr. Cooper personally. We grant Mr. Cooper's, Richard's and Joyce's requests for attorney fees on appeal. In Joyce's cross-appeal, we hold the trial court's use of Mr. Cummins to review the McDirmid accountings was not reversible error.

Affirmed in part; reversed in part.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

98

MUNSON, J., and MILLER, J. Pro Tem., concur.

Review denied at 130 Wn.2d 1011 (1996).