IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | |
| | ) | No. 33613-1-III |
| LESTER J. KILE, | ) | (Consolidated with |
| | ) | 34048-1-III) |
| | ) | |
| Deceased. | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — Jeannie Kile appeals from superior court rulings construing her late father's will and removing her as personal representative of his estate. We affirm.

FACTS

This is the second appeal to reach this court concerning the Kile Farm Trust established by the late Lester Kile. The previous action involved the dissolution of the marriage between Jeannie Kile and Gordon Kendall. *In re Marriage of Kile*, 186 Wn. App. 864, 347 P.3d 894 (2015). The primary contestants in this action are Lester's daughter, Jeannie Kile, and her son, Cody Kendall. Evidence from the dissolution trial figured prominently in both the trial and appeal of this TEDRA[1] action.

Lester died in March 2012, two months after being deposed for the dissolution case. The Farm Trust, created by the terms of Lester's will, gave all interest in Kile

---

[1] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

Farms, Inc. to Jeannie Kile as trustee. Cody Kendall was appointed as successor trustee if Jeannie did not serve. The trust was to last "as long as there are family members willing and able to farm or manage the farming activity." Clerk's Papers (CP) at 8. Income from the farm trust was to be distributed to Jeannie Kile, subject to one important proviso: "If however, Cody Kendall operates the farm at any time herein, then he shall be entitled to two-thirds of such income and Jeannie Kile shall be entitled to one-third." CP at 8-9. The trust was also responsible for paying all expenses of the farming operation. CP at 8.

Lester Kile had leased the farm properties to Jeannie Kile since 1988. She held a retail job and, from 1990 on, had her husband Gordon farm the land. The characterization as community or separate property of that leasehold, as well as adjoining farm lands that Jeannie Kile purchased at her father's suggestion and with his assistance, was the primary issue in the appeal from the dissolution trial. *Kile*, 186 Wn. App. at 875-885.[2] Lester Kile's deposition stated his intent that the land stay in his family and, for that purpose, he only would lease to his daughter and assist her. He threatened to cancel the lease with his daughter if Gordon Kendall continued to farm the land and requested

---

[2] This court ultimately concluded that (1) the profits from the farming operation should have been characterized as community property, (2) equipment purchased from Mr. Kile was community property subject to Ms. Kile's right to reimbursement for separate property contributions, and (3) the land purchased by Ms. Kile was her separate property, but was subject to a community right of reimbursement. 186 Wn. App. at 880-885.

that Jeannie Kile "turn over the farming operation to my grandson, Cody Kendall . . . I am willing to renew the lease to Jeannie Kile on the basis that Cody becomes the primary operator of all farming operations involving my farm." CP at 795.

Ms. Kile submitted a declaration prior to the dissolution trial in which she indicated that Cody had taken over the farming operation and that it was her father's intent that Cody farm the property. CP at 815. She testified during the trial that she considered herself the "operator" of the farm and that Cody was currently farming the land. Exhibit 223 at 93, 255.

The will also appointed Ms. Kile to serve as personal representative of her father's estate and expressly named her as trustee of much of the property within that estate. Although Cody farmed the land in 2012, Ms. Kile declined to pay him any share of the profits while the estate was being settled. She requested on January 10, 2013, that her son sign an "At-Will Employment Contract" in order to continue farming. He refused to do so and Jeannie removed him from the farm operation and brought an unlawful detainer action to forcibly evict Cody and his family from the farmhouse. In separate transactions, Ms. Kile then leased the farmhouse and the farmland to third parties.

The following month, Cody filed this TEDRA action. After lengthy discovery, Judge Harold Clarke largely denied competing motions for summary judgment. He did grant Ms. Kile partial summary judgment, finding that the clause of the will granting Ms. Kile the power to manage the farm as trustee was not ambiguous, but he also concluded

3

that the term "operate" was ambiguous. The case was tried to Judge Michael Price five months later.

Trial testimony showed convoluted record keeping for the farm during Ms. Kile's tenure as leaseholder and as trustee. She testified that there were 18 bank accounts associated with the farming operations. Ms. Kile also testified that she had always "operated" the farm during the years she held the lease and that both her son and her former husband had essentially served as employees when farming the land. Judge Price noted in his oral ruling that there was not a single word of Ms. Kile's testimony that was complimentary of her son, "not a word." He described her testimony "as a wholesale attack on every aspect of Cody Kendall's person." Report of Proceedings at 461. He determined that Jeannie was estopped from claiming to be the sole "operator" of the farm because she had taken the position in the dissolution trial that Cody had jointly operated the farm with her in accordance with her father's wishes.

Judge Price also concluded that by failing to pay Cody and failing to allow him to operate the farm, Ms. Kile was violating her father's wishes and thereby breached her fiduciary duty as both personal representative of the estate and as trustee of the farm trust. Judge Price removed Ms. Kile from her roles as personal representative and trustee, substituting Cody Kendall as successor for each role. A forensic accounting was ordered to determine damages, and Ms. Kile was ordered to personally pay attorney fees.

4

Three experts submitted differing valuations for Judge Price's consideration. He rejected two of the accountings that failed to follow the parameters of Mr. Kile's will. He accepted the valuation of Certified Public Accountant Renee Grandinetti, with some minor adjustments involving rent and attorney fee costs. Subsequently, judgment was entered for Mr. Kendall against his mother in the sum of $340,928.

Ms. Kile timely appealed to this court. A panel considered the matter without argument.

## ANALYSIS

Ms. Kile raises several contentions that can be grouped into five areas. She contends that the trial court erred in considering extrinsic evidence, and particularly in considering Mr. Kile's deposition, when construing the will. She also argues that the court erred in applying judicial estoppel, removing her as both personal representative and trustee, assessing attorney fees against her personally, and in calculating damages. She also assigns error to twelve findings of fact and one conclusion of law that she believes contains factual elements. We believe all of the findings were supported by the evidence and do not individually address those claims except to the extent necessary to address associated legal arguments. We address the legal arguments in the group order suggested by our statement.

5

*Construction of the Will*

Ms. Kile contends that the trial court erred both in construing the will and in considering Lester Kile's deposition to do so. We agree that the word "operates" was ambiguous and, therefore, subject to judicial construction. The trial court properly considered extrinsic evidence of the term's meaning.

The interpretation of a will or trust instrument, including the determination of whether a will contains an ambiguity, is a question of law subject to de novo review. *In re Estate of Bernard*, 182 Wn. App. 692, 704, 332 P.3d 480, *review denied*, 181 Wn.2d 1027 (2014). The purpose of construing a will is to give effect to the testator's intent. *In re Estate of Riemcke*, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972). Such intention must, if possible, be ascertained from the language of the will itself and the will must be considered in its entirety and effect must be given every part thereof. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). If there is ambiguity as to the testator's intent, extrinsic facts are admissible to explain the language in the will. *In re Estate of Sherry*, 158 Wn. App. 69, 82, 240 P.3d 1182 (2010). There is no requirement that the extrinsic evidence be testamentary in nature; courts will utilize the testimony of those persons involved in drafting the will in determining testator intent. *Bergau*, 103 Wn.2d at 439.

TEDRA encompasses nearly all possible disputes touching on wills or trusts, and grants trial courts exceptionally broad authority to craft appropriate resolutions to those

6

disputes. *See* RCW 11.96A.020; RCW 11.96A.060. The statute has been recognized as providing a "grant of plenary powers to the trial court." *In re Irrevocable Trust of McKean*, 144 Wn. App. 333, 343, 183 P.3d 317 (2008). *Accord In re Estates of Jones*, 170 Wn. App. 594, 604, 287 P.3d 610 (2012). In view of the broad powers to remedy a problem, we review a trial court's exercise of its plenary authority for abuse of discretion. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

These basic principles resolve Ms. Kile's first two contentions against her position. The term "operates" is ambiguous. Ms. Kile asserts a definition that equates with "to manage." To that end, she asserted that she was the operator of the farm due to her trustee status even though she did not personally till the soil. Mr. Kendall asserted that "operates" equated with "to farm." Both interpretations are reasonable meanings for the word "operates" in the context of running a farm.

Accordingly, the trial court correctly concluded that "operates" was ambiguous. It was therefore free to consider extrinsic evidence bearing on the question. *Bergau*, 103 Wn.2d at 436. In *Bergau*, the attorney who drafted the will testified to the testator's purpose in choosing a method for valuing the family farm. *Id.* at 438. In view of the ambiguity, taking testimony from the attorney was proper. *Id.* Similarly here, the trial court was free to consider extrinsic evidence of the testator's intent.

Unlike most instances where the trial court is reduced to considering hearsay testimony concerning the intent of the testator, this case involved the unusual circumstance where the testator had expressed his intent under oath for a court proceeding. It is difficult to imagine there could be better evidence of a testator's intent than to have the testator testify under oath on that topic. This evidence was highly relevant. The trial court understandably admitted the testimony.

Ms. Kile thus is forced to make a secondary argument contending that the deposition testimony fails because it is not a valid testamentary document. While we agree with the observation that the testimony would be ineffectual as a testamentary document, the argument fails because the evidence was not required to be in that form. The deposition testimony did not purport to make a bequest or create a trust. Instead, it explained the purpose that Mr. Kile was trying to achieve in his dealings with his daughter. He sought to have the farm remain in the family and end up with his grandson if he chose to farm the land. What better way existed than to transfer the land once Cody Kendall had accepted the mantle and farmed the land as his grandfather hoped?

Even without the deposition testimony, the structure of the will supported the same interpretation of "operates." Ms. Kile was a beneficiary of the farm trust; her right to income was not dependent on whether she conducted any part of the farm operation or not. Instead, the word "operates" applied only to Cody Kendall who was to get 2/3 of the farm income in the event he operated the farm. There was significant evidence in the

8

record that the 2/3 to 1/3 share of the crop was the most common payment arrangement between landowners (1/3 share) who lease land to tenants who farm it (2/3 share). It seems very likely that this traditional share was written into the will with the expectation that Cody would earn the traditional 2/3 share if he farmed the land.[3]

This interpretation is strengthened by the will provision calling for the trust to pay for the expenses of the farming operation (seeds, insurance, etc.) off the top, even though traditional arrangements typically left most or all of the costs of farming with the tenant farmer. Judge Price astutely analyzed this provision in his memorandum decision concerning damages. CP at 720-721. It was, he recognized, a way for a young farmer with no credit (such as a grandson starting out in the business) and no ability to secure loans against the land to have a chance to succeed financially in the difficult business of agriculture. It is highly unlikely that such a tenant-friendly arrangement would be written into a trust if the farm land was to be leased to a nonfamily member.

The trial court correctly concluded that the word "operates" was ambiguous and that the testator intended, both through the will and in his court testimony, that grandson Cody Kendall receive 2/3 of the crop proceeds if he "operated" the family farm by

_____

[3] In the (admittedly unlikely) circumstance that Cody "operated" the land solely by managing it in Jeannie's stead, the will would still distribute all of the farm proceeds to Cody and Jeannie without consideration of any share for the actual farmer. That would seem to account only for the (even unlikelier) circumstance that Jeannie was actively farming the land under her son's management, but doing so for half of the going rate.

farming it. Lester Kile intended that Cody Kendall receive 2/3 of the proceeds of a crop, after expenses paid for by the trust, if he farmed the land. The trial court correctly discerned the intent of the will.

*Judicial Estoppel*

The trial court applied judicial estoppel against Ms. Kile, ruling that she could not pursue different interpretations of what her father intended in different legal proceedings. We agree that the trial court correctly estopped Ms. Kile's efforts to pursue conflicting factual theories in different lawsuits.

Judicial estoppel is an equitable doctrine designed to prevent a party from gaining an advantage by asserting one factual position in court and later taking a clearly inconsistent position. *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 224-225, 108 P.3d 147 (2005). "The purpose of judicial estoppel is to bar as evidence statements and declarations by a party which would be contrary to sworn testimony the party has given in the same or prior judicial proceedings." *King v. Clodfelter*, 10 Wn. App. 514, 519, 518 P.2d 206 (1974). A second purpose of the doctrine is to "preserve respect for judicial proceedings." *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (internal quotations omitted). Courts focus on three factors when deciding the applicability of judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether accepting the new position would create the perception that a court was misled, and (3) whether a party

10

would gain an unfair advantage from the change. *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008) (citing *Arkison*, 160 Wn.2d at 538-539). Application of judicial estoppel is reviewed for abuse of discretion. *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006).

The trial court did not abuse its discretion in applying judicial estoppel here. Ms. Kile filed a declaration in the dissolution case asserting that Cody, not Gordon, was operating the farm and that her father wanted Cody to farm the land. In the TEDRA action, she contended that she, alone, operated the farm. On appeal, she contends that she consistently claimed to be the operator by virtue of her management of the operation. Although she may have consistently maintained her view that "operates" equates to "manages," her argument misses the bigger picture. She told the dissolution court that her father wanted Cody to farm the land and that he was doing so. She could not then contend in the TEDRA action that her son served as nothing more than an employee who could be fired at her discretion because that position was totally at odds with what she had previously told the dissolution court about her father's intent. The factual positions were inconsistent, even if her legal argument about the meaning of the word "operates" was the same in both proceedings. The first factor of the *Miller* test weighs in favor of applying judicial estoppel.

The second factor also favors the trial court's position. If both courts had believed her, the perception would be that one of them had been misled. At the dissolution trial

11

Ms. Kile was contending that her son, not her husband, was the person farming the land, an important factual piece of her argument that the marital community did not operate the farm. She also posited there that her father wanted grandson Cody to farm the land. When her father's intent became the primary contested issue in the TEDRA action, she changed her view, claiming that her father's actual intent was that she manage the farm. Although Lester Kile's intent was the critical issue in the second case and was only a supporting piece of evidence in the first, acceptance of the conflicting statements could lead to the perception that a court had been misled in one proceeding or the other.

The final factor is whether Ms. Kile would have derived an unfair advantage from the inconsistent positions. Ms. Kile argues here that this court's intervening reversal in the dissolution case deprived her of any benefit from the inconsistent testimony. One problem with that argument, however, is that the reversal came after Judge Price had applied judicial estoppel in the TEDRA trial. More fundamentally, the factor looks to whether a party *would* benefit, not whether she actually did, from the inconsistent positions. Stated differently, this factor looks to whether the inconsistency was about an important feature of the case. While perhaps not that important to the dissolution case, the intent of Lester Kile was the most critical issue in this case. Accordingly, Ms. Kile could have benefited in this action from the change in factual position.

Accordingly, all of the factors weigh in favor of the trial court's ruling and we cannot say that it abused its discretion. The declaration in the dissolution trial was

12

exceptionally significant in the TEDRA case once the trial court determined that the will was ambiguous and opened the door for extrinsic evidence. It was proper for the trial court to hold Ms. Kile to the factual view of her father's intent expressed in the dissolution trial. She was still free to argue, as she did, that the will had a different legal meaning than that asserted by her son. But, she could not claim that her father's intent was different than what she told Judge Moreno in the dissolution case.

The trial court did not abuse its discretion.

*Removal as Personal Representative and Trustee*

Ms. Kile next argues that the trial court had neither a legal basis, nor a sufficient factual basis, for removing her as personal representative and trustee. Given our resolution of the previous contentions, this claim must fail.

A personal representative must administer the estate in the best interest of the beneficiaries. *In re Estate of Jones*, 152 Wn.2d 1, 19 n.14, 93 P.3d 147 (2004). RCW 11.68.070 provides that should the personal representative of an estate become subject to removal for any reason specified in RCW 11.28.250, the court may, within its discretion, remove the personal representative and appoint a successor. RCW 11.28.250 authorizes the court to remove the personal representative where it has reason to believe she has wasted, embezzled, or mismanaged property of the estate, or where for other cause or reason the court finds such action is necessary, if the conduct was similar to other grounds listed in the statute. *Jones*, 152 Wn.2d at 9-10. One of the unspecified causes or

13

reasons for removing the personal representative is "where a conflict of interest exists which would contravene the rights of the beneficiaries and result in waste of the estate." *Id.* at 19.

"Although the trial judge is given broad discretion as to the grounds upon which he may remove an executor, the grounds must be valid and supported by the record." *In re Estates of Aaberg*, 25 Wn. App. 336, 339, 607 P.2d 1227 (1980). If, however, any of the trial court's several grounds for removal is valid, its decision will not be disturbed on appeal. *Id.*

Similar standards apply to the removal of a trustee. The decision to remove a trustee will seldom be reversed absent a manifest abuse of discretion. *In re Estate of Ehlers*, 80 Wn. App. 751, 761, 911 P.2d 1017 (1996). A court has a large amount of discretion to remove the trustee when there is sufficient reason to do so in order to protect the best interests of the trust and its beneficiaries. *In re Estate of Cooper*, 81 Wn. App. 79, 94-95, 913 P.2d 393 (1996).

A trustee is a fiduciary who owes the highest degree of good faith, diligence, and undivided loyalty to the beneficiaries. *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 502, 844 P.2d 403 (1993). A trustee's duties and powers are determined by the terms of the trust, by common law, and by statute. *Ehlers*, 80 Wn. App. at 757. A trustee who breaches her duties may be removed by petition of a beneficiary. RCW 11.98.039(4); *Ehlers*, 80 Wn. App. at 761. The trustee may only

14

remove a trustee for "reasonable cause." RCW 11.98.039(4). A court may find reasonable cause in situations involving conflict of interest between the trustee beneficiary and the other trust beneficiaries and bad will generated by litigation. *Bartlett v. Betlach*, 136 Wn. App. 8, 20, 146 P.3d 1235 (2006); *Waits v. Hamlin*, 55 Wn. App. 193, 198, 776 P.2d 1003 (1989). The petitioning beneficiary must demonstrate that removal is clearly necessary to save the trust property. *Ehlers*, 80 Wn. App. at 761.

Since the record supports the determination that Ms. Kile deprived Mr. Cody Kendall of his 2/3 share of the 2012 farm crop, there was a validly supported and legally sufficient basis for removing her from both positions. Her fiduciary duty as both personal representative and as trustee of the farm trust was to carry out the intentions of her father and act for the benefit of the beneficiaries of the will and trust. The evidence revealed that she failed to meet those obligations.

As noted, she failed to carry out her father's intent that Cody Kendall farm the land. She did not pay Cody his share of the 2012 crop proceeds. Her financial record keeping was a mess, with at least 18 different bank accounts and such poor accounting that several different experts could not completely unravel it. These failures alone were very amply supported by evidence in the trial record and were even partially supported by her own testimony. Substantial evidence supported the determination.

These established failures also provided legally sufficient reasons to remove Ms. Kile from both positions. She was not managing the estate and the trust in accordance

15

with her father's intentions, she was not acting in the best interests of all of the beneficiaries, particularly the interests of the son, and her mismanagement of the finances prevented experts from sorting out the problems. Her actions engendered bad will between herself as trustee and her son, one of the beneficiaries. Even viewing her actions in the most charitable light, she mismanaged the estate.[4] This was an adequate basis at law to remove her.

The trial court did not abuse its discretion by removing Ms. Kile as personal representative and trustee. The actions were supported both factually and legally.

*Imposition of Fees and Costs against Ms. Kile*

Ms. Kile next argues that the court erred in imposing costs and attorney fees against her personally instead of against the trust and estate. In light of our resolution of the previous arguments, there was no error.

RCW 11.96A.150 permits the probate court, in its discretion, to impose reasonable attorney fees and costs in an estate proceeding. A trust beneficiary who establishes a breach of fiduciary duty by the trustee is entitled to recover reasonable attorney fees against the trustee personally. *Estate of Cooper*, 81 Wn. App. at 92.

Ms. Kile does not contest the amount of costs and fees imposed. Since the record amply supports her mismanagement of the estate to the detriment of one of the

---

[4] There is strong evidence that her actions with respect to Cody Kendall were more malicious than negligent.

16

beneficiaries, Cody Kendall, the trial court did not err in requiring Ms. Kile to personally pay those costs and fees to him. *Id.* The estate did not even arguably benefit from her actions and there was no basis for assessing costs and fees against the estate.

Under these facts, there was no error in assessing the fees against Ms. Kile personally.

*Damages Award*

Ms. Kile next contends that the damages award was not supported by substantial evidence. To the contrary, the trial court's careful and detailed assessment in its memorandum opinion on damages demonstrates the contrary position.

As with many of the other arguments raised in this appeal, our review of the damages decision is for clear abuse of discretion. *Johnson v. Cash Store*, 116 Wn. App. 833, 849, 68 P.3d 1099 (2003). The trial court had very tenable reasons for ruling as it did.

We need not lengthen this opinion unnecessarily by reciting all of the evidence in support of the trial court's ruling. Judge Price very nicely did that in his memorandum decision and accompanying order. *See* CP at 718-724. In summary form, those documents discussed the competing views of three experts and showed why only one of them, Ms. Grandinetti, properly applied farm accounting standards to the scheme set up by the will of Lester Kile. The other experts largely assessed the damages from the standard landlord-tenant relationship common to leased farm land instead of to the Kile

17

farm trust. The trust was required to bear the costs of farm production prior to splitting the proceeds. Ms. Grandinetti's accounting most closely followed the trust's requirements. Judge Price adjusted the figures where necessary to account for trial rulings regarding rent, fees paid to Ms. Kile, and costs owed for the Grandinetti accounting.

The carefully written ruling concerning damages showed both an ample factual basis for the judgment and very tenable reasons for the award. There was no abuse of discretion.

*Attorney Fees on Appeal*

Finally, both parties seek attorney fees on appeal. Under TEDRA, this court has great discretion in awarding fees and may "consider any relevant factor, including whether a case presents novel or unique issues." *In re Guardianship of Lamb*, 173 Wn.2d 173, 198, 265 P.3d 876 (2011). Where the beneficiaries to an estate are involved in a dispute, the court may award both sides fees from the estate because the litigation resolves the rights of all. *In re Estate of Watlack*, 88 Wn. App. 603, 612-613, 945 P.2d 1154 (1997). Therefore, where both sides advance reasonable, good faith arguments in support of their respective positions, the court may assess fees to neither party or against the estate so that all contesting parties bear the costs of the dispute. *In re Estate of Evans*, 181 Wn. App. 436, 452, 326 P.3d 755 (2014).

We decline to award any fees or costs to Ms. Kile. Not only did she not prevail at all in this appeal, her failure to live up to her fiduciary obligations brought about this entire lawsuit.

Mr. Kendall does not contend that Ms. Kile's appeal was frivolous or motivated by bad faith, but seeks attorney fees on the basis of the statute. Since the ambiguity in the will created the legal basis for Ms. Kile's legal fight, we deem it appropriate to award Mr. Kendall his reasonable attorney fees in this action payable from the estate.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____ (result only)
Lawrence-Berrey, J.

19