IN RE ESTATE OF W. J. BEST.

JAMES BEST, Executor, Appellee, v. MARY KALDENBERG et al., Appellants.

OCTOBER 16, 1928.

Anderson & Perry, for appellants.

Bates, Simmons & Richmond, for appellee.

MORLING, J.—The first clause of the will directs payment of debts and funeral expenses. The second is as follows:

"Second: After the payment of such funeral expenses and debts, I give, devise and bequeath to my children and their descendants as follows: I devise and bequeath to James Alexander Kaldenberg, son of Hessel Kaldenberg, the sum of $500.00, to be used to further his education, said amount to be placed in a savings account and be allowed to run until he has arrived at the age of eighteen, when it shall be used for that purpose. I devise and bequeath to Hugh Moore, son of J. L. Moore, the sum of $500.00, to be set aside and used also as the above amount in the Kaldenberg case. On account of having advanced to

Hugh Best and Martha Huston, the sum of $1,000.00 each, I direct that this amount be withheld first out of their distributive share. I then bequeath and devise as follows: To William Steele and Mrs. Hessel Kaldenberg, the one share that would have gone to their mother, Margaret Steele, deceased. After the above amounts have been withheld and applied as directed, I hereby devise and bequeath to James Best, Hugh Best, Martha Huston, Lizzie McCracken, Jennie Dunlap, Helen Moore, Mary Moore, share and share alike."

No point is made with reference to the obscurity of these latter provisions. It is stipulated that testator left as his heirs William Steele, Hessel Kaldenberg, and the seven persons last named in the will. Their relationship to testator does not appear. There is no evidence of the circumstances in which the will was made.

The questions presented may be stated thus:

Was the bequest to James, as expressed in the will, intended by testator to be for James's enjoyment generally, so that he (or his heirs, if his death preceded that of testator) would have the property interest in it from the date of testator's death, or was it testator's declared purpose to create, and, until James should arrive at the age of 18, allow to accumulate, a fund for the specific use of then furthering James's education,—a specific use which was rendered impossible of accomplishment by James's death before the will took effect? Or if the bequest be assumed to be to James, and, in the language of the statute, Code of 1924, Section 11861, the devisee having died before the testator, and his heirs being entitled to inherit the bequest, unless from the terms of the will a contrary intent is manifest, is such contrary intent manifest? Appellants argue that "the intention of the testator is the controlling consideration," and "is to be gathered from the whole will;" that "the main purpose and general intent prevail over the particular provision, when they cannot be reconciled;" that "a construction should be adopted which will give effect to every clause, and meaning to every word, if it can be done without violating the manifest intent or design." It is certain that the bequest to James was not to be paid until he arrived at the age of 18, and that testator directed it and its accumulations to be, not invested in property for James, but then "used to further

his education."; In view of the age which James was required to attain before the money was used, and in view of the language "to further his education," and in the light of present-day conditions, it is reasonable to assume that testator desired James (and also Hugh) to enjoy higher education,—to have that, rather than property. There can be no doubt that the testator commanded the $500 and accumulations to be so used. The language is mandatory: "When it shall be used for that purpose." The bequest was in terms to James, but the will was inartificially drawn, and we cannot, as appellants argue (somewhat inconsistently) that we should, cut off the bequest at the end of James's name and the designation of the amount, and say that the rest of the plain language of the bequest is to be disregarded, and the bequest treated as an absolute one to James, with merely subsequent precatory expression as to the use to be made of it. Appellants say that the instrument is to be construed as of the date of testator's death. This is incorrect. The language of the will must ordinarily be interpreted as of the date at which it is used,—date of execution. 40 Cyc. 1425. When the will was made, James was less than one year old, and when testator died, he would have been, if living, only about two and one-half years old. Of course, testator did not expect that this young boy would receive the money and deposit it in a savings account. At the age of 18, the money was to be used to further his education. James would still be a minor, and testator directed, not that the money should then be paid to James, but that it should be used to further his education.

The general scheme of the will, after the specific provision for the further education of the two boys, was equality of enjoyment among the beneficiaries, including Hessel Kaldenberg, the mother of James. Testator's purpose was not to give her, or any of them, any advantage in the division. When James died at the age of two and one-half years, the purpose of the bequest failed, and became impossible of fulfillment. Testator made no new will or codicil after James died. It is a fair inference that he would naturally think that his declared purpose of furthering James's education had failed, and payment of the bequest could not be demanded.

It is provided by Section 11861:

"If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

It seems to us manifest from the terms of this will that testator did not intend that the provision made for James's education should be paid to James's heirs, his father and mother, if James should die in childhood and testator's purpose should be thereby frustrated. We have been cited to, and have found, no precedents which, on the facts, are particularly in point, but we think the case is within the principle of the following authorities: *Stivers v. Gardner*, 88 Iowa 307; *Anderson v. Anderson*, 181 Iowa 578, 587; 40 Cyc. 1818, 1819, 1932; *Burleyson v. Whitley*, 97 N. C. 295 (2 S. E. 450); *In re Eaton's Estate*, 160 Mich. 230 (125 N. W. 85, 87); *Huston v. Dodge*, 111 Me. 246 (88 Atl. 888, 890).

As we view the case, the bequest is not one to James, made subject to a condition subsequent which has become impossible of performance by James's death, as appellants argue. It is the bequest itself, in its entire purpose, which, by reason of James's death in testator's lifetime, has become impossible of fulfillment.

Appellants rely on *Davenport v. Sandeman*, 204 Iowa 927. The bequest there was of $1,200 to the son, with a parenthetical direction "to be invested in a home in Orient, Iowa," and an authorization to the executor to see that it was so invested. It was not provided that the money was to be used for a purpose such that it would not reappear in property. The home, when the money was invested in it, would be the property of the devisee and subject to his disposition. There was no direction that the property, when acquired, should not be consumed, or disposed of. See 2 Schouler on Wills, Executors & Administrators (6th Ed.), Section 1357. The son outlived testator, and the bequest was actually paid to him. No fund was established to be kept, or commanded to be used, for a particular purpose which would result in its consumption.—*Affirmed*.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.