[No. 13296-6-II.   Division Two.   March 25, 1992.]

DAVID H. ARMSTRONG, *as Administrator, Respondent,* v. ORVAL BRAY, ET AL, *Appellants,* DIANE SEITZ, ET AL, *Respondents.*

*Sverre O. Staurset* and *Lawrence M. Ross,* for appellants.

*David H. Armstrong, Armstrong & Cable, Frank A. Shiers,* and *Shiers, Chrey, Hauge, Cox & Caulkins,* for respondents.

ALEXANDER, J. — The Estate of Orval Bray appeals a judgment of the Kitsap County Superior Court forfeiting all of the interest in community property that Orval Bray had possessed with his deceased wife. We reverse, holding that Orval Bray did not, by slaying his wife, forfeit his interest in his one-half of their community property.

In 1979, Orval and Mary Lou Bray, husband and wife, executed a statutory community property agreement. *See* RCW 26.16.120. The agreement provided that all property then possessed by Orval and Mary Lou, as well as all property later acquired by either of them, was to be deemed community property.[1] In addition, it provided that: "upon the death of either of the parties hereto, all of the said properties and property rights of either or both shall be their community property and title thereto should pass to the survivor as the sole and separate property of that survivor thereafter."[2]

Several years later, Orval commenced a dissolution proceeding against Mary Lou. Before a decree of dissolution was entered, Orval shot and killed Mary Lou. He was convicted of second degree murder. As a security for attorney's fees that he incurred in connection with his defense of the murder charge, Orval gave his attorneys a deed of trust to real estate that he and Mary Lou had held as community property.

---

[1]The record does not disclose whether Orval or Mary Lou possessed any separate property which was converted to community property by virtue of the community property agreement.

[2]Orval and Mary Lou also executed wills which provided that upon the death of either, all of their property was to pass to the survivor, provided, however, that if the survivor did not survive the deceased spouse by 30 days, the property of the deceased was to pass to Mary Lou's children.

David Armstrong, as the administrator of Mary Lou's estate, commenced an action against Orval in the Kitsap County Superior Court in an effort to preclude Orval from acquiring any property from Mary Lou through any statutes or by virtue of their community property agreement. The Superior Court granted a summary judgment in favor of Mary Lou's estate.

Orval then sought to partition the community real estate, asking the trial court to set over one-half of the property to him. Sverre Staurset, as substitute trustee of the deed of trust, was permitted to intervene in the lawsuit. The trial court ruled that because Orval had killed Mary Lou, he forfeited all of his interest in their community property. It therefore denied partition and entered a judgment providing that Orval had no interest in the community property that Orval and Mary Lou had possessed. It ruled, as a consequence, that Staurset acquired no interest in the property through the deed of trust. Orval and Staurset have both appealed.[3]

The facts are undisputed, the matter having been submitted to the trial court after argument on essentially stipulated facts.[4] The question we must resolve is this: Does one, by slaying his or her spouse, forfeit all of the interest he or she possessed in their community property, or is the slayer merely precluded from acquiring the slain spouse's interest in their community property? That is an issue of first impression in Washington.

---

[3]Orval Bray died on November 13, 1990. In March 1991, Staurset, the intervenor, was appointed the administrator with will annexed of Orval's estate. In May 1991, Staurset moved to be substituted as appellant and that motion was granted.

[4]Appellants assign error to numerous of the trial court's findings of fact. Those findings are, in reality, conclusions of law and, thus, are reviewed de novo. The only report of proceedings we have been furnished is the argument of counsel.

To resolve the issue, we must look first to the so-called "slayer" statutes, which provide as follows:

> No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following.

RCW 11.84.020.

> The slayer shall be deemed to have predeceased the decedent as to property which would have passed from the decedent or his estate to the slayer under the statutes of descent and distribution or have been acquired by statutory right as surviving spouse or under any agreement made with the decedent under the provisions of RCW 26.16.120 as it now exists or is hereafter amended.

RCW 11.84.030.

Orval Bray argues that these statutes cannot be invoked to deny him ownership of one-half of the community property. Such a result, he asserts, would cause the slayer statute to be penal, contrary to RCW 11.84.900.[5] He stresses also that under Washington law, his interest in any community property possessed by him and his wife was a vested interest. In support of that contention, he cites *Lyon v. Lyon*, 100 Wn.2d 409, 413, 670 P.2d 272 (1983), in which the court said "each spouse has a present, undivided half interest in each specific item of community property." *See also United States v. Overman*, 424 F.2d 1142 (9th Cir. 1970) (in Washington, the interest of each spouse in the community is intangible, equal, present, and vested); *Occidental Life Ins. Co. v. Powers*, 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937) (spouses have a vested right in community property). He maintains that, pursuant to RCW 11.02.070, he had a present vested interest in an undivided half of their property

---

[5]RCW 11.84.900 provides:

"This chapter shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this state that no person shall be allowed to profit by his own wrong, wherever committed."

at the time of her death that was unaffected by the slayer statutes. RCW 11.02.070 provides:

> Upon the death of a decedent, a one-half share of the community property shall be confirmed to the surviving spouse, and the other one-half share shall be subject to testamentary disposition by the decedent, . . ..

Armstrong responds by asserting that RCW 11.02.070 has no application to this case because Orval and Mary Lou entered into a community property agreement pursuant to the provisions of RCW 26.16.120.[6] He argues that the Brays' agreement transferred all of the community property of the parties to the surviving spouse, as his or her sole and separate property, upon the death of either spouse.[7] He relies on the aforementioned slayer statutes and, in particular, on RCW 11.84.030, which provides that a slayer is "deemed to have predeceased the decedent as to property which would have passed . . . under any agreement made with the decedent under the provisions of RCW 26.16.120 . . .". Armstrong contends that under the Brays' community property agreement, the property that "would have passed" was all of their community property. Because Orval is deemed to have predeceased his wife under RCW 11.84.030, he reasons, all of the community property passed to Mary Lou, and upon her death, to her children pursuant to the provisions of her will. Armstrong suggests that any other interpretation would, in effect, amount to a cancellation or setting aside of a contract, for reasons other than for fraud or other recognized head of equity jurisdiction, contrary to RCW 26.16.120. In addition,

---

[6]RCW 26.16.120 provides:

"Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either. . . ."

[7]This is in accord with Washington case law, which provides that: "[w]hen one of the parties to the recorded contract dies, the agreement is completely executed — thus title to the community property immediately vests as the sole and separate property of the survivor." (Italics omitted.) *Norris v. Norris*, 25 Wn. App. 290, 295, 605 P.2d 1296, *aff'd*, 95 Wn.2d 124, 622 P.2d 816 (1980).

he argues it would permit Orval to acquire an immediate possessory interest in one-half of the property, a possessory interest which he did not enjoy before his wife's death. In that connection, he points out that Bray removed all doubt about whether he would be awarded less than one-half of the community property in a dissolution decree, by killing his wife before entry of the decree.

■ While strong arguments exist on both sides of the issue in this case, we find ourselves in agreement with Orval Bray and Staurset. Pursuant to RCW 11.84.030, Orval is "deemed to have predeceased" Mary Lou only with respect to "property which would have passed from [her] or [her] estate to [him] . . .". At the time of her death, Mary Lou possessed only an undivided one-half interest in the community property. Because Orval was the slayer of Mary Lou, her one-half interest in the community property does not pass to him. Orval concedes that point. Orval does, however, retain his one-half interest in the community property. A contrary ruling would run counter to the fundamental rule that each spouse has a vested one-half interest in the community property. The purpose of the slayer statutes is to prevent a person from profiting by his wrongful act. The statutes were not enacted to exact a penalty. RCW 11.84.900. Because Orval already had an interest in one-half of the community property before the slaying, he did not profit from her death. He should not be penalized by having his one-half of the community property taken away from him.

Finally, we note that the result we reach here is consistent with the result which would be dictated by a statute relating to the disposition of jointly owned property in such circumstances. RCW 11.84.050(1) provides that as to property held in joint tenancy, one-half of the property passes immediately to the decedent's estate, and the other half remains in the slayer's possession until his or her death, unless the court grants a partition. Thus, had the Brays' property been held in joint tenancy, Mary Lou's estate would have received half immediately, but the other half would have been retained by

Orval until his death or until a partition was granted. While the provisions of RCW 11.84.050 are not directly applicable, they are, at least, indicative of legislative intent as to jointly held assets.

Because of our resolution of the issue, it is unnecessary for us to discuss Orval Bray's argument that the trial court's determination that he had no interest in the community property worked an unconstitutional forfeiture.

Reversed and remanded for further proceedings consistent with this opinion.

MORGAN, J., and WORSWICK, J. Pro Tem., concur.