[No. 32991-0-I.   Division One.   May 2, 1994.]

THE ESTATE OF JOHAN KVANDE, *Respondent*, v.
RAYMOND OLSEN, *Appellant*.

*Mark W. Pouley* and *Cole & Cole,* for appellant.

*Michael Andrew Winslow* and *H. James Zachor,* for respondent.

WEBSTER, C.J. — Raymond Olsen appeals a trial court decision distributing the residue of Alfred Kvande's estate by intestate succession. He argues that the anti-lapse statute dictates that the residue pass to him, the lineal descendant of the devisee.

## FACTS

Kvande died in March 1992. At the time he wrote his will, April 1990, his sister, Olga, was alive and residing at Josephine Sunset Home in Snohomish County. However, she predeceased her brother. The residuary clause of Kvande's will provides for distribution of the balance of his estate as follows:

> That the balance and residue of my estate, I bequeath and devise to the Josephine Sunset Home at 9901-272nd Pl. N.W., Stanwood, Washington 98292 for the use and purpose to help

maintain and care for my sister Olga [Olsen] who is a resident there.

The will makes specific bequests totaling $70,000, leaving a balance of $160,000. Kvande's will does not contain instructions regarding the disposition of the residue if the provision above cannot be fulfilled.

Kvande's closest living relatives are two nieces and a nephew, Carolee Lien and Sharon Lockett (his deceased brother Bernard's daughters), and Raymond Olsen (Olga's son). None of these persons is a beneficiary under Kvande's will. In superior court, the personal representative requested the court's approval of distribution of the residuary estate to Kvande's intestate heirs, Lien, Lockett, and Olsen, in equal shares. A commissioner entered an order approving distribution of the residue as suggested by the personal representative. Olsen filed a motion for revision contending that he should be the sole recipient of the residue. A judge affirmed the commissioner's ruling.

## I

Olsen claims that Washington's anti-lapse statute applies here and mandates that the gift to his mother passes to him as her lineal descendant.

Washington's anti-lapse statute provides that when an estate is devised or bequeathed to any child, grandchild, or other relative of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, these descendants take the estate. RCW 11.12.110. Washington courts have applied the anti-lapse statute to testamentary options to purchase property and to inter vivos trusts. *In re Estate of Niehenke*, 117 Wn.2d 631, 639, 818 P.2d 1324 (1991); *In re Estate of Button*, 79 Wn.2d 849, 854-55, 490 P.2d 731, 47 A.L.R.3d 352 (1971). The *Button* court suggested in dicta that the anti-lapse statute may also affect testamentary trusts.[1]

---

[1]However, we do not believe that it applies to the type of testamentary trust at issue. The *Button* court stated "[i]f it [the inter vivos trust] were made by testamentary trust, we do not think that . . . this statute was not meant to affect it, and the only difference between such a gift and that involved here is that the inter vivos trust disposes of property upon the death of the settlor without the necessity

Other jurisdictions have found similar anti-lapse statutes inapplicable where the manifest purpose of a testamentary trust was not that the interest of beneficiaries should pass to their distributees in the event of the death of the beneficiary before fulfillment of the trust. Annotation, *Statute To Prevent Lapse in Event of Death of Devisee or Legatee Before Testator as Applicable to Interest of Beneficiary Under Trust Who Dies Before Testator*, 118 A.L.R. 559 (1939) (citing *In re Estate of Best*, 206 Iowa 786, 221 N.W. 369 (1928); *In re Estate of Pierce*, 153 Misc. 896, 276 N.Y.S. 433 (1934)). A bequest in trust for purposes which cannot be carried out is regarded as a resulting trust for the testator's heirs. 5 William J. Bowe & Douglas H. Parker, *Page on Wills* § 40.32 (1960). In the absence of a manifest intention or provision to the contrary, the property included in a trust will pass to the heirs or next of kin of the testator, or to his residuary devisee or legatee, as the case may be, where the trust is invalid. 96 C.J.S. *Wills* § 1060 (1957); *Barringer v. Gunderson*, 81 Nev. 288, 304, 402 P.2d 470, 478 (1965).

Here, we find that the trust was a specific purpose trust. Kvande's will employed clear and narrow instructions as to the use of the trust corpus: "for the use and purpose to help maintain and care for my sister Olga". The trust language did not indicate that the trustee, Olga's nursing home, use the money for any other purpose, nor did it indicate that any other person benefit from the trust once established. The specific language of this testamentary trust is similar to other specific purpose trusts such as funeral expense or educational trusts. *See, e.g., In re Estate of Pierce, supra* (anti-lapse statute did not apply to testamentary trust for funeral expenses of testatrix's predeceased brother); *In re Estate of Best, supra* (anti-lapse statute did not apply to testamentary trust to further education of testator's pre-

of complying with the statute of wills." *Button*, at 854. In our view, the *Button* court contemplated a testamentary trust involving an outright gift analogous to that being made through the inter vivos trust there (an outright gift of trust funds on the testator's death to his mother) rather than testamentary trusts set up for specific purposes. We do not take this language to imply that Washington's anti-lapse statute applies to all types of testamentary trusts.

deceased beneficiary). Here, the trust provision is succinctly worded and there appears to be little that could have been added to its language to narrow its scope. It is reasonable to conclude that Kvande believed that his residuary estate would be adequate to meet Olga's lifetime needs, and that the trust corpus would be exhausted. Had he thought otherwise, he could have provided for disposition of the trust residue upon termination.

This is a case of first impression in Washington. We have decided not to apply Washington's anti-lapse statute to "specific purpose" testamentary trusts such as the one at issue. Because we find the trust here to be a specific purpose trust, we distribute it to Kvande's heirs at law. *See In re Estate of Best, supra; In re Estate of Pierce, supra.*

■ Although Washington law presumes that the anti-lapse statute applies, *Niehenke*, at 640, it is also true that this statute is based on the assumption that this is what a testator would have intended had the testator contemplated this contingency.[2] *Niehenke*, at 640. The paramount duty of a court is to give effect to the testator's intent. Such intention must, if possible, be ascertained from the language of the will. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). This court recently held that survivorship language in a will indicates that the testator intended to condition the devise on the beneficiary's survival, thereby avoiding application of the anti-lapse statute. *In re Estate of Rehwinkel*, 71 Wn. App. 827, 862 P.2d 639 (1993). Similarly, Kvande's bequest to Olga assumed Olga be alive to take it: a provision for her care can only be valid while she is alive. With no provision for the trust remainder, it may be assumed that Kvande believed Olga would exhaust it. Thus, since Kvande's will indicates an intent to condition Olga's gift on her survival, and no intent to have the gift pass to Olsen, we find that Kvande's intent was to preclude operation of the statute.

---

[2]Namely, that his property go to the lineal descendants of his named relative-beneficiary because such descendants would be relatives for whose welfare he might be supposed to have a concern.

■ In addition, although there is a general presumption in favor of testacy over intestacy, *see, e.g., In re Estate of Griffen*, 86 Wn.2d 223, 226, 543 P.2d 245 (1975), some courts have found that where there is room for construction, that meaning will be adopted which favors those who would inherit under the laws of intestacy. *In re Estate of Brooks*, 20 Wn. App. 311, 313, 579 P.2d 1351 (1978); *In re Estate of Lambell*, 200 Wash. 220, 226, 93 P.2d 352 (1939). We construe Kvande's will to favor equal distributions to his heirs at law because if we favor intestacy, no line of Kvande's family is disinherited, thus coinciding with a central aim of the anti-lapse statute, to avoid the disinheritance of a branch of the testator's family. *Niehenke*, at 637-38.[3] If testacy is favored, then Kvande's brother Bernard's side of the family (represented by the children of his nieces Carolee Lien and Sharon Lockett) receives $40,000, while Olsen, the child of Kvande's sister, Olga Olsen, receives $160,000. There is no evidence to support such a distribution.

Thus, we determine that Kvande intended a specific purpose trust and follow *Pierce* and *Best* in distributing it to Kvande's heirs. We also find that in keeping with *Button's* dicta and the rationale of *Rehwinkel*, we will apply the anti-lapse statute to testamentary trusts involving outright gifts but not to specific purpose testamentary trusts of this type.

## II

Olsen argues that the personal representative's attorney is not entitled to have his fees paid by the residuary estate when those fees were incurred by arguing issues not benefiting the estate. He also asserts that the personal representative may not take sides in the controversy, or have his attorney awarded fees when the attorney is representing the personal representative's own interests.

---

[3]It is true, however, that intestate distribution benefits Bernard Kvande's side of the family twice, once under the terms of the will (Bernard's grandchildren, Mike Lockett and David Lien, also took under Kvande's will), and again by the operation of intestacy. In contrast, Olga's side of the family only benefits through the residuary clause. However, there is no evidence that Kvande intended the remainder of Olga's trust to pass to her heirs at her death, and in any case, the trial-court-approved distribution does benefit Olga's son, Olsen.

Former RCW 11.96.140 provides that "[e]ither the superior court or the court on appeal, may, in its discretion, order costs, including attorneys fees, to be paid by any party to the proceedings or out of the assets of the estate, as justice may require." Appellate courts will not interfere with an allowance of attorneys' fees in probate matters unless there are facts and circumstances clearly showing an abuse of the trial court's discretion. *In re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985).[4] Although it may be inappropriate in some cases to assess fees against an estate where the estate is not substantially benefited by the dispute, this is not a firm rule; there are situations where attorneys' fees are justly assessed against an estate. *In re Estate of Burmeister*, 70 Wn. App. 532, 540, 854 P.2d 653 (1993). Where the award of attorneys' fees affects the interests of uninvolved beneficiaries and would result in their partially funding the attorneys' fees for the litigating parties, attorneys' fees will not be assessed against the estate. *Burmeister*, at 540. However, where both sides to a contest over distribution advance reasonable and good faith arguments, the trial court may properly assess attorneys' fees against the estate rather than against the parties personally. *Burmeister*, at 539-40.

In *Burmeister*, the estate from which attorneys' fees were paid was the estate subject to the litigants' contest. No other beneficiaries were affected. Here, similarly, there has been a partial distribution of the estate, with only the residue remaining to be distributed, and therefore the residuary estate is the only part of the estate out of which attorneys' fees could be paid.

Olsen argues that there was no benefit to the estate from the personal representative's attorney drafting a memorandum supporting the estate's distribution and appearing in court to explain the estate's position on distribution. How-

---

[4]In *In re Estate of Peterson*, 12 Wn.2d 686, 728, 123 P.2d 733 (1942), reaffirmed in *Larson*, the Washington Supreme Court set forth the criteria for the determination of attorneys' fees in a probate matter. However, here, the reasonableness of the fees is not at issue. It is the reason for and source of the fees that is in dispute.

ever, this case involves an objection to the distribution of an estate, and a personal representative is obliged to present his position in a probate matter where there is a dispute as to distribution. Given that this is a matter of first impression, we find that it is unrealistic for Olsen to contend that the personal representative should appear without a memorandum explaining how and why he arrived at his proposed distribution. As in *Burmeister*, both sides here advanced reasonable and good faith arguments, for which attorneys' fees out of the estate is proper.

As for Olsen's argument that a personal representative cannot be heard to urge the claims of one distributee against another or others, citing *Thompson v. Weimer*, 1 Wn.2d 145, 150, 95 P.2d 772 (1939), no litigant here was a distributee under the terms of the will, which reduces the appearance of bias. The *Weimer* court further stated that it is the executor's duty to take sides in a matter establishing a claim against the estate, citing 21 Am. Jur. *Defense of Suits Against Estates* § 223, at 496 (1939). There, the court did allow the personal representative to take sides on appeal because his duty to defend the estate from invalid and doubtful suits extended to taking an appeal from an adverse decision of the trial court where he had reasonable grounds to think the decision erroneous.

Finally, Olsen contends that the personal representative may not take sides in a controversy or be awarded fees when he is representing his own personal interests, citing *In re Estate of Howerton*, 65 Wn.2d 868, 400 P.2d 85 (1965). In *Howerton*, the decedent's wife was a party to the contest, named in the will, and stood to gain one-half of her husband's estate from the contest. Here, by contrast, Lien and Lockett, parties to the contest, are not named in the will, and stand to gain one-third of Kvande's residuary estate, $53,000, from the contest. Moreover, they do not benefit to Olsen's exclusion, but rather in equal proportion to him.

We find that the trial court correctly determined that attorneys' fees were payable out of the residuary estate.

Affirmed.

SCHOLFIELD and GROSSE, JJ., concur.

Review denied at 124 Wn. 2d 1021 (1994).