# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | No. 70210-6-I |
| CALVIN H. EVANS SR., | ) ) ) | (consolidated with No. 70193-2-I & No. 70317-0-I) |
| SHARON EADEN, VICKI SANSING, and KENNETH EVANS, | ) ) ) | DIVISION ONE |
| Respondents/Cross Appellants | ) ) | PUBLISHED OPINION |
| v. | ) ) | |
| ESTATE OF CALVIN H. EVANS SR. | ) ) | |
| Appellant/Cross Respondent, | ) ) | |
| LINDSAY EVANS, CORY EVANS, JESSE EVANS, and CALVIN EVANS III, | ) ) ) | |
| Respondents/Cross Respondents. | ) ) | FILED: May 27, 2014 |

APPELWICK, J. — Washington's antilapse statute, RCW 11.12.110, applies when a beneficiary under a will is deemed to have predeceased the testator, because he or she financially abused the testator under chapter 11.84 RCW. In this case, the testator's intent did not overcome the presumed application of the antilapse statute. The trial court did not abuse its discretion in awarding attorney fees to both competing beneficiary groups and assessing those fees against the Estate. We affirm.

FACTS

Calvin H. Evans, Sr. (Cal Sr.) was born on March 8, 1933. At the time of his death, Cal Sr. was no longer married and had four children: Kenneth Evans, Vicki Sansing, Sharon Eaden, and Calvin H. Evans, Jr. (Cal Jr.).[1]

Cal Sr. suffered from a medical condition called polycythemia, which results in a thickening of the blood. He had his first stroke related to the condition in 2000.

In 2003, Cal Sr. purchased a 40 acre ranch in Sultan, Washington. Soon after he purchased another 70 acre parcel nearby. Cal Sr. requested that Cal Jr. and his family move to the ranch to help care for him. They did so in early 2005.

In March 2005, Cal Sr. was hospitalized for another stroke and was diagnosed with dementia secondary to the stroke. Cal Sr.'s health continued to decline over the course of the year. His teeth began falling out and he lost substantial weight. Cal Jr. observed forgetfulness and memory loss in his father.

While living on the Sultan ranch, Cal Jr. made several large purchases using his father's money. For instance, Cal Jr. used $20,000 of Cal Sr.'s money to purchase a dump truck. He borrowed another $75,000 from his father to make improvements to the ranch. He also spent $15,000 of his father's money to buy a park model mobile home.

On December 28, 2005, Sharon filed a guardianship petition in Snohomish County alleging that Cal Sr. was incapacitated and needed a guardian. An order appointing a guardian ad litem was entered the same day. Cal Sr. did not want to be subject to a guardianship and was upset with Sharon for filing the petition.

---

[1] We refer to the parties by their first names to avoid confusion. No disrespect is intended.

2

Early in 2006, Cal Jr. and his wife prepared a will for Cal Sr. The will left Cal Sr.'s Sultan ranch and his Cessna airplane to Cal Jr. The will divided Cal Sr.'s remaining real properties equally between Vicki and Kenneth, but not Sharon. It left only $25,000 to Sharon. The residue of Cal Sr.'s estate was to be placed in trust. Every year on the anniversary of his death, the trustee was to disburse $10,000 to Cal Sr.'s children, excluding Sharon, and $5,000 to each of his grandchildren.

The will was witnessed and executed on March 7, 2006. Cal Sr.'s attorney Charles Diesen and Diesen's law partner Carol Johnson questioned Cal Sr. privately and believed he had testamentary capacity. The will named Diesen as personal representative of the "Estate."

Cal Sr. died on April 5, 2011. By that time, the only real property he still owned was the Sultan ranch. The rest had been sold to pay for his care.

On April 29, 2011, Cal Sr.'s will was filed with the trial court, along with a petition to admit the will to probate and appoint Diesen as personal representative of Cal Sr.'s Estate. The court did so on the same day following an ex parte proceeding.

On July 14, 2011, three of Cal Sr.'s children—Sharon, Kenneth, and Vicki (collectively Eaden)—filed a petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. Eaden's petition challenged the validity of Cal Sr.'s will and sought a declaration of rights pursuant to RCW 11.84.020. Eaden argued that Cal Sr. lacked testamentary capacity at the time he made the will and was acting under fraudulent representations and undue influence from Cal Jr. Eaden also asserted that Cal Jr. was a financial abuser, because he participated in the willful and unlawful financial exploitation of his father, a vulnerable adult under RCW 74.34.020. Therefore, Eaden

argued, Cal Jr. should be treated as predeceased under RCW 11.84.020 and the Estate should pass to Cal Sr.'s three other children.

On May 31, 2012, the trial court upheld the will, denying Eaden's request to declare Cal Sr.'s will invalid due to lack of testamentary capacity and undue influence by Cal Jr. However, the trial court held Cal Jr. to be an abuser under RCW 11.84.010(1), finding that he financially exploited Cal Sr. Therefore, the trial court deemed Cal Jr. to have predeceased Cal Sr. Cal Jr. was accordingly disinherited and ordered to "take nothing from the Estate by devise or legacy, or by laws of descent and distribution." The trial court entered extensive findings of fact and conclusions of law on the same day. That decision was not appealed.

On September 12, 2012, Eaden filed a second TEDRA petition requesting that the trial court not apply Washington's antilapse statute, RCW 11.12.110, in favor of Cal Jr.'s children—Lindsey Evans, Cory Evans, Jesse Evans, and Calvin Evans III. Eaden acknowledged that the antilapse statute would ordinarily apply when a beneficiary predeceases the testator, but argued that applying it here would be contrary to Cal Sr.'s testamentary intent. Therefore, Eaden argued that any bequests made to Cal Jr. should pass to the residue of the Estate, rather than to Cal Jr.'s children.

On January 25, 2013, Cal Jr.'s children requested an award of attorney fees, against either Eaden or the Estate. On February 11, 2013, Eaden requested attorney fees under RCW 11.96A.150(1) for the second TEDRA petition. They asked that the fees be assessed against the Estate, because the litigation involved all beneficiaries to the Estate.

4

On March 12, 2013, the trial court denied Eaden's second TEDRA petition and held that the antilapse statute applied:

> 3.    The slayer/abuser statute, RCW 11.84.020, is clear on its face and does not preclude the issue of the abuser inheriting under the anti-lapse statute;
>
> 4.    The anti-lapse statute, RCW 11.12.110, is clear on its face and applies to circumstances of financial abuse in the same manner as it would in a case of a slayer;
>
> 5.    The residuary trust created by Calvin Evan Sr.'s Will cannot be construed as an expression of the testator's intent sufficient to avoid the application of the anti-lapse statute;
>
> 6.    The Petitioner's Petition for Declaration of Rights of Beneficiaries Re: Non-Application of Anti-Lapse Statute Under Chapter 11.94A RCW (TEDRA) is DENIED; and
>
> 7.    The children of Calvin Evans, Jr., shall inherit his bequests of the ranch and the units of membership in the C & C Aviation LLC by reason of the application of the anti-lapse statute.

The trial court also held that Diesen, the Estate's personal representative, had standing to appear and urge the application of the antilapse statute to the bequests made to Cal Jr.

The trial court granted both parties' request for attorney fees and ordered the fees to be paid by the Estate.

The Estate appeals the trial court's award of fees to Eaden and the court's assessment of both fee awards against the Estate. Eaden cross appeals the denial of the second TEDRA petition, challenging the court's application of the antilapse statute to the abuser statute.

5

## DISCUSSION

I. Application of the Antilapse Statute

Eaden argues that the trial court erred in holding, as a matter of law, that Washington's antilapse statute applies to bequests to persons deemed to have predeceased the testator because of financial abuse under chapter 11.84 RCW. Instead, Eaden advocates for an equitable exception to the antilapse statute in which courts consider whether applying the statute benefits the abuser; prevents disinheritance of an entire branch of the testator's family; offends the decedent's overall testamentary plan by exacerbating the effect of abuse on that plan; and results in the loss caused by the abuse to fall only or disproportionately on the beneficiaries other than the abuser's issue. Eaden also argues that it would be an abuse of discretion to apply the antilapse statute here, because all elements of this equitable exception are met.[2]

Simply put, we must decide whether the antilapse statute is triggered when a beneficiary is found to be a financial abuser and deemed to predecease the testator under chapter 11.84 RCW. This is an issue of first impression in Washington. If yes, we must then determine whether Cal Sr.'s testamentary intent overcomes the rebuttable presumption that the antilapse statute applies.

Statutory interpretation is a question of law that we review de novo. State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). Our primary duty in construing a statute is to ascertain and carry out the legislature's intent. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Statutory interpretation begins with the

---

[2] Eaden's motion to dismiss the Estate as a party to the antilapse cross appeal, dated October 14, 2013, is denied.

6

statute's plain meaning, which we discern from the ordinary meaning of the language used in the context of the entire statute, related statutory provisions, and the statutory scheme as a whole. Id. If the statute's meaning is unambiguous, our inquiry is at an end. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Conversely, a statute is ambiguous when it is susceptible to two or more reasonable interpretations, but not merely because different interpretations are possible. In re Det. of Aston, 161 Wn. App. 824, 842, 251 P.3d 917 (2011), review denied, 173 Wn.2d 1031, 277 P.3d 668 (2012).

A. Antilapse Statute Triggered by Abuser Statute

Washington's antilapse statute provides for statutory succession when a named heir predeceases the testator of a will. RCW 11.12.110. The statute specifies, in relevant part:

> Unless otherwise provided, when any property shall be given under a will, or under a trust of which the decedent is a grantor and which by its terms becomes irrevocable upon or before the grantor's death, to any issue of a grandparent of the decedent and that issue dies before the decedent, or dies before that issue's interest is no longer subject to a contingency, leaving descendants who survive the decedent, those descendants shall take that property as the predeceased issue would have done if the predeceased issue had survived the decedent.

Id. (emphasis added).

The antilapse statute reflects a legislative determination that, as a matter of public policy, when the testator fails to provide for the possibility that his consanguineous beneficiary will predecease him, the lineal descendants of the beneficiary take his or her share. In re Estate of Rehwinkel, 71 Wn. App. 827, 829, 862 P.2d 639 (1993). At common law, testamentary gifts lapse if a beneficiary predeceased the testator. In re Estate of Niehenke, 117 Wn.2d 631, 638, 818 P.2d 1324 (1991). The legislature enacted the

7

antilapse statute to prevent this, in derogation of the common law. Id. "This is said to be a recognition of a natural and instinctive concern for the welfare of those in a testator's bloodline." In re Estate of Allmond, 10 Wn. App. 869, 871, 520 P.2d 1388 (1974).

Under chapter 11.84 RCW—the slayer statute—a slayer cannot benefit from the death of the decedent. RCW 11.84.020. The chapter is to "be construed broadly to effect the policy of this state that no person shall be allowed to profit by his or her own wrong, wherever committed." RCW 11.84.900. In July 2009, the legislature expanded the scope of the slayer statute to include financial abusers as well as slayers. LAWS OF 2009, ch. 525, §§ 1-17. "Abuser" is defined as "any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful financial exploitation of a vulnerable adult." RCW 11.84.010(1).

The statute provides for the disposition of property if a beneficiary is found to be a slayer or abuser. RCW 11.84.020 specifies that "[n]o slayer or abuser shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following." (Emphasis added.) The following section in the statute provides that "[t]he slayer or abuser shall be deemed to have predeceased the decedent as to property which would have passed from the decedent or his or her estate to the slayer or abuser." RCW 11.84.030 (emphasis added). RCW 11.84.040 then states that "[p]roperty which would have passed to or for the benefit of the slayer or abuser by devise or legacy from the decedent shall be distributed as if he or she had predeceased the decedent." (Emphasis added.)

This statutory language is unambiguous and provides an express method for distributing an abuser's inheritance. If a beneficiary is found to be an abuser, he or she

8

is deemed to predecease the testator. RCW 11.84.030. Any property or benefit to the abuser must then be distributed as if the abuser predeceased the decedent.[3] RCW 11.84.040. The antilapse statute then provides for the division of property when a beneficiary predeceases the testator. RCW 11.12.110. Nothing in the abuser statute indicates that the term predecease means anything different than it does in the antilapse statute. Thus, the abuser statute's consistent use of the term "predecease" triggers the antilapse statute, even though the antilapse statute is not explicitly referenced.

Furthermore, the legislature is presumed to know the law in the area in which it is legislating. Wynn v. Earin, 163 Wn.2d 361, 371, 181 P.3d 806 (2008). The legislature is likewise presumed to enact laws with full knowledge of existing laws. Jametsky v. Olsen, 179 Wn.2d 756, 766, 317 P.3d 1003 (2014). We can presume that the legislature knew that treating an abuser as predeceased would trigger the antilapse statute. The legislature could have specified that the abuser's descendants were also disinherited. It did not do so.

Legislative history supports our conclusion that the legislature intended for the antilapse statute to apply. The slayer statute was adopted in 1955. LAWS OF 1955, ch. 141. The final bill signed into law was practically a verbatim copy of a model slayer statute proposed by John Wade in 1936. J. Gordon Gose & Joseph W. Hawley, Probate

---

[3] Except, RCW 11.84.170(2) gives trial courts discretion to allow an abuser, but not a slayer, "to acquire or receive an interest in property or any other benefit described in this chapter in any manner the court deems equitable." In doing so, the court may consider (1) various elements of the decedent's dispositive scheme; (2) the decedent's likely intent given the totality of the circumstances; and (3) the degree of harm resulting from the abuser's financial exploitation of the decedent. RCW 11.84.170(2). The trial court did not do so here, nor did Cal Jr. appeal from that decision. The discretion granted in RCW 11.84.170(2) further suggests that, by contrast, courts have no discretion in whether the antilapse statute is triggered by the abuser statute.

*Legislation Enacted by the 1955 Session of the Washington Legislature*, 31 WASH. L. REV. 22, 26 (1956); see also John W. Wade, *Acquisition of Property by Willfully Killing Another—A Statutory Solution*, 49 HARV. L. REV. 715 (1936). However, section 4 of Wade's model statute expressly provided that the antilapse statute did not apply, with the result that property did not pass to the slayer's issue. Wade, *Acquisition*, supra, at 727. The Washington legislature did not include Wade's section 4 in the slayer statute. Compare LAWS OF 1955, ch. 141, §§ 2-3, with Wade, *Acquisition*, supra, at 727. By not specifically precluding application of the antilapse statute, the Washington legislature mandated that the slayer be treated as if he or she predeceased the decedent, allowing children of slayers to take the slayer's share by substitution.

The Washington Supreme Court in Haviland explained that the abuser statute regulates the receipt of benefits. In re Estate of Haviland, 177 Wn.2d 68, 76, 301 P.3d 31 (2013). The statute is not intended to be penal. See id.; see also Armstrong v. Bray, 64 Wn. App. 736, 741, 826 P.2d 706 (1992). The Haviland court noted that the "financial abuse slayer statutes only affect those persons who both abuse a vulnerable adult and are beneficiaries of the abused person." 177 Wn.2d at 76. The innocent descendants of the slayer or abuser do not meet this criteria.

In the context of slayers, the Washington Supreme Court recognized that most states have been "reluctant to extend the rule beyond the slayer and deny the slayer's heirs from taking directly from the victim's estate." In re Estate of Kissinger, 166 Wn.2d 120, 126, 206 P.3d 665 (2009). This reluctance generally rests on the notion of fairness to innocent persons. Mary Louise Fellows, *The Slayer Rule: Not Solely a Matter of Equity*, 71 IOWA L. REV. 489, 495 (1986). In her law review article, Fellows points out that the

purpose of the antilapse statute is to imply a devise to further the testator's intent. Id. at 530. The antilapse statute "should not be viewed differently than a provision in the victim's will for an alternative taker to the slayer; therefore, extending the fiction of the slayer's death to the antilapse statute seems correct." Id. She likewise notes that "[w]hen the slayer does not have the right to control the disposition" of the testator's estate, "any indirect benefit that results from allowing the natural objects of the slayer's bounty to take from the victim's estate does not warrant disqualifying these innocent persons." Id. at 495.

Despite Eaden's attempt to distinguish slayers and abusers, the legislature did not do so, and instead addressed them together in a single statutory scheme. Washington's abuser statute prevents the abuser from controlling disposition of the testator's estate. The abuser is cut off from any direct benefit or inheritance, except as provided in RCW 11.84.170(2). Therefore, as Fellows argues, any incidental benefit to the abuser does not warrant denying benefits to the abuser's innocent heirs.

We hold that Washington's antilapse statute, RCW 11.12.110, applies when a beneficiary under a will is deemed to have predeceased the testator, because he or she financially abused the testator under chapter 11.84 RCW.

B. Antilapse Application to the Facts of this Case

Once the antilapse statute is triggered, there is a presumption in favor of its application. However, its application is not absolute. It can be rebutted by the testator's clear intent to preclude operation of the antilapse statute.

In determining whether the antilapse statute applies, the paramount duty of the court is to give effect to the testator's intent. Rehwinkel, 71 Wn. App. at 830. Such

intention must, if possible, be ascertained from the language of the will in its entirety. Id. The party opposing its operation bears the burden of showing that it does not apply. Id. All doubts are to be resolved in favor of the statute's operation, which is to be liberally construed. Id.

The intent on the part of the testator to preclude operation of the antilapse statute must be clearly shown. Id. Where the testator uses words of survivorship indicating an intention that the devisee shall take the gift only if he or she survives the testator, the antilapse statute does not apply. Id. at 831. The statute likewise does not apply if the testator provides for an alternative disposition. Id. at 830.

In Kvande, the testator bequeathed the balance and residue of his estate "'for the use and purpose to help maintain and care'" for his sister Olga, who predeceased him. In re Estate of Kvande, 74 Wn. App. 65, 66-67, 871 P.2d 669 (1994). The appellate court held that this indicated the testator's intent to condition Olga's gift on her survival, with no intent for the gift pass on to Olga's son. Id. at 69. This precluded operation of the antilapse statute. Id.

Similarly, the appellate court held in Rehwinkel that bequests in the testator's will "'to those of the following who are living at the time of my death'" demonstrated a clear intent to preclude application of the antilapse statute. 71 Wn. App. at 831. Such survivorship language manifests a testator's intent that named beneficiaries take under the will only if they survive the testator. Id. at 833; see also Niehenke, 117 Wn.2d at 641 (applying antilapse statute where there was no "clear manifestation of the testator's intention to condition the gift on [the beneficiary's] survival").

12

There is no clear intent in Cal Sr.'s will to preclude application of the antilapse statute or to disinherit Cal Jr.'s descendants. In fact, the opposite is true. Cal Sr.'s will included the following three provisions:

VI.

I give, devise and bequeath my interest in the Cessna 310 123DE airplane and six (6) parcels of real estate owned by me in Snohomish County, Washington to my son, Calvin H. Evans Jr. . . .

VII.

I give, devise and bequeath all of the remaining real estate owned by me in two(2) equal portions to Vicki Ann Sansing and Kenneth Lee Evans.

VIII.

All of the rest, residue and remainder of my estate including bank accounts, securities or annuities, I give in trust with Frontier Bank with directions that on the first anniversary of my death and on each year after, the Trustee disburse $10,000 to each of three(3) of my children, Vicky Ann Sansing, Calvin H. Evans, Jr., and Kenneth Lee Evans and $5,000 to each of my grandchildren. If any beneficiary should die during the administration of the trust and before the trust is exhausted, their bequest shall be disbursed to their heirs.

Cal Sr. did not condition inheritance on the survival of Cal Jr. or the survival of any other beneficiaries. Rather, the final sentence of Section VIII suggests that Cal Sr. wanted the antilapse statute to apply. If any beneficiaries died before the trust was exhausted, he wanted their bequest to pass to their heirs. Given this language, applying the antilapse statute gives effect to Cal Sr.'s intent to provide for his heirs <u>and</u> their descendants. Eaden is correct that Cal Jr.'s children would not be completely disinherited if the antilapse statute did not apply. However, they have failed to show any intent by Cal Sr. to preclude operation of the antilapse statute. We therefore hold that the trial court properly applied the antilapse statute here.

13

II.  Trial Court Attorney Fees Award

The Estate argues that the trial court erred in awarding Eaden attorney fees and costs under RCW 11.96A.150, because they were not the prevailing party in the TEDRA action.  The Estate acknowledges that RCW 11.96A.150 gives the trial court broad discretion to award attorney fees.  Nevertheless, the Estate contends that awarding fees to the losing party is manifestly unreasonable.

The Estate argues that even if the trial court properly awarded fees to Eaden, it erred in assessing both fee awards against the Estate.  The Estate contends that the dispute here was solely between two competing classes of beneficiaries and therefore could not result in a substantial benefit to the Estate.[4]

RCW 11.96A.150(1) provides:

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings.  The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable.  In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

We review a trial court's award of fees under RCW 11.96A.150 for abuse of discretion.  In re Estate of Black, 153 Wn.2d 152, 173, 102 P.3d 796 (2004).  A trial court abuses its

---

[4] Eaden argues that the Estate's appeal of the attorney fees award should be dismissed, because the Estate is not an aggrieved party under RAP 3.1.  We decline to hold that an estate cannot be an aggrieved party for purposes of challenging fee awards.  However, in this particular case, the benefit to the Estate from a challenge to the fee award eludes us.

discretion if its decision rests on unreasonable or untenable grounds. Dix v. ICT Grp., Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

RCW 11.96A.150(1) allows a court to consider any relevant factor, including whether a case presents novel or unique issues. In re Guardianship of Lamb, 173 Wn.2d 173, 198, 265 P.3d 876 (2011). The statute does not limit fee awards to only the prevailing party. Rather, it states that the court may award fees to "any party" from the "assets of the estate." RCW 11.96A.150(1). This is precisely the situation here.

The Estate argues that the touchstone of an attorney fees award from an estate is whether the litigation resulted in a substantial benefit to the estate. In re Estate of Black, 116 Wn. App. 476, 490, 66 P.3d 670 (2003), aff'd, 152 Wn.2d 152. In Niehenke, the Washington Supreme Court held that it is inappropriate to assess fees against an estate when the litigation benefits only certain rival beneficiaries to the estate. 117 Wn.2d at 648. Such an award would unfairly penalize the beneficiaries not involved in the litigation. Id.

However, the legislature amended RCW 11.96A.150(1) in 2007 to add the sentence, "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." LAWS OF 2007, ch. 475, § 5 (emphasis added). Based on this amendment, the continuing vitality of the substantial benefit requirement is questionable.

Furthermore, the Niehenke court did not hold that attorney fees could never be appropriately awarded against an estate. 117 Wn.2d at 648. Where all the beneficiaries to an estate are involved in a dispute, the trial court may award both sides fees from the

15

estate, because the litigation resolves the rights of all. Black, 116 Wn. App. at 491; see also In re Estate of Watlack, 88 Wn. App. 603, 612-13, 945 P.2d 1154 (1997). Thus, where both sides advance reasonable, good faith arguments in support of their respective positions, the trial court may assess fees against the estate, so that all the contesting parties bear the costs of the dispute. Black, 116 Wn. App. at 491.

Based on the plain language of RCW 11.96A.150(1) and well-established case law, the trial court properly awarded fees to both parties and assessed those fees against the Estate. The will named Cal Sr.'s four children as beneficiaries: Sharon Eaden, Kenneth Evans, Vicki Sansing, and Calvin H. Evans, Jr. The dispute here was between Cal Jr., his heirs, and Cal Sr.'s three remaining children—all the beneficiaries to Cal Sr.'s estate. The litigation resolved all of their respective rights. Awarding fees against the Estate does not unfairly penalize any absent beneficiaries, because all the beneficiaries to the Estate participated in the dispute. The concerns expressed by the Niehenke court do not apply here. Moreover, Eaden raised a novel issue of law regarding the application of the antilapse statute to the financial abuser statute. This was a reasonable, good faith argument.

The trial court followed the language of RCW 11.96A.150. Therefore, we hold that the trial court did not abuse its discretion in awarding fees to both sides and assessing those fees against the Estate.

III.    Eaden's Motion to Strike

Eaden moved to strike two portions of the clerk's papers, pages 290-95 and 530-70, both transcripts of the trial court's oral decisions in the first and second TEDRA

petitions. Eaden argues that clerk's papers must be limited to written decisions of the trial court, because the Estate does not assert that the court's written orders are incomplete.

RAP 9.1(c) specifies that clerk's papers include "the pleadings, orders, and other papers filed with the clerk of the trial court." RAP 9.6(b)(1)(C) explains that the clerk's papers shall include "any written order or ruling not attached to the notice of appeal." Eaden argues that the RAPs nowhere provide for oral decisions to be included in the clerk's papers. Motion to Strike, 3-4. An oral decision has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment. Grieco v. Wilson, 144 Wn. App. 865, 872, 184 P.3d 668 (2008), aff'd by In re Custody of E.A.T.W, 168 Wn.2d 335, 227 P.3d 1284 (2010). In Grieco, we granted a motion to strike a transcript of the oral decision supplementing written findings when the superior court's written order was not incomplete and did not need clarification. Id. at 871-72.

Here, the trial court's written orders in the first and second TEDRA petition are complete and do not need clarification. The trial court did not formally incorporate its oral decisions into its written orders. To the extent that these transcripts conflict with the written orders, they have not been considered here.[5]

---

[5] See Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012) ("[A] motion to strike is typically not necessary to point out evidence and issues a litigant believes this court should not consider. No one at the Court of Appeals goes through the record or the briefs with a stamp or scissors to prevent the judges who are hearing the case from seeing material deemed irrelevant or prejudicial. So long as there is an opportunity (as there was here) to include argument in the party's brief, the brief is the appropriate vehicle for pointing out allegedly extraneous materials—not a separate motion to strike."), review denied, 175 Wn.2d 1004, 285 P.3d 884 (2012).

IV.   Attorney Fees on Appeal

Eaden and Cal Jr.'s children both request their reasonable attorney fees and costs on appeal pursuant to RCW 11.96A.150(1) and RAP 18.1(a). RCW 11.96A.150(1) allows for a discretionary award of attorney fees to any party, against any party or against the Estate, at both the trial court and appellate court level. We deny the request for fees by Cal Jr.'s children. We grant Eaden's request only for reasonable fees and costs associated with defending the Estate's appeal of the trial court's attorney fees award. This award shall be assessed against the Estate.

We affirm.

WE CONCUR: